Bryant, Appellant, *v.* Bryant et al.

Argued November 28, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Frank F. Truscott,* of *Bell, Trinkle, Truscott & Bell,* with him *Samuel R. Lazowick* and *E. Clinton Rhodes,* for appellant.—Assuming that the paper dated January 15, 1925, is a written contract not coming collaterally into the case and one in issue between the parties, plaintiff had the right to show by parol evidence the true consideration: Cridge's Est., 289 Pa. 331.

The paper is not a writing sued upon in this case, but comes into the case collaterally and is not subject to the so-called parol evidence rule: Curtin v. Gas Co., 233 Pa. 397; Alexander v. Righter, 240 Pa. 22; Green v. Green, 255 Pa. 224; Reel v. Oravetz, 279 Pa. 147; Hanauer v. Surety Co., 279 Pa. 345; Garrison v. Salkind, 285 Pa. 265.

Defendants, in their affidavits of defense, admit that there was an additional oral understanding with respect

to the subject-matter of the writing of January 15, 1925, and such an admission allows plaintiff to show what the true understanding was: Kerr v. McClure, 266 Pa. 103; Federal Sales Co. v. Farrell, 264 Pa. 149; O'Bara v. Bielecka, 279 Pa. 307; Ward v. Zeigler, 285 Pa. 557.

The paper is not between the parties to this suit and therefore is not subject to the so-called parol evidence rule: Simons & Sons v. Emery, 254 Pa. 569; Gill's Est., 268 Pa. 500; Roberts v. Cauffiel, 283 Pa. 64.

Under the settled law of this Commonwealth, if one of three joint obligors discharges his or her share of the joint obligation, by a payment to plaintiff, all three of the obligors are not thereby discharged: Burke v. Nobel, 48 Pa. 168; Schoch v. Miller, 10 Pa. 401; Greenwald v. Kaster, 86 Pa. 45.

*C. J. Hepburn*, with him *M. Hampton Todd*, for appellee.—We respectfully submit that the case at bar is on all fours with, and is ruled by, Wagner v. Marcus, 288 Pa. 579.

The instrument is the sole evidence of the contract, as to all three of the defendants.

This is not a case of a separate composition with one of several joint debtors.

The instrument does not come collaterally into the case: Garrison v. Salkind, 285 Pa. 265.

There was no sufficient consideration: Logan v. Mathews, 6 Pa. 417; Huntingdon Co. v. Spyker, 274 Pa. 570; Kesler's Est., 143 Pa. 386.

OPINION BY MR. JUSTICE SADLER, January 7, 1929:

William Bryant, a successful coal merchant of the City of Philadelphia, died on March 31, 1923, leaving a last will and testament, dated six days earlier. His actual conduct of the business had ceased in 1922 because of ill health, though from time to time he exercised some personal supervision. He was survived by a widow, Mary Bryant, whom he had married in 1877. By her

first marriage, she had one child, Mrs. Lamb, and, with the daughter of the latter, Mrs. Du Sossoit, the four named resided together in the family home. The two brothers of the deceased, had long since been dead. One of them left to survive him a son, Howard, who for many years had been employed by his uncle at a small salary. He became estranged from the deceased, and entered into the service of a rival firm, and was engaged by it for some five years. In 1922 he returned to his former position at a salary of thirty dollars a week, and remained in the same capacity until his employer's death. By the will, the estate was devised and bequeathed to the widow, her daughter and grandchild, with provision for a life estate in a $75,000 fund established for the benefit of the nephew, Howard.

After the death of William Bryant and prior to his funeral, the stepdaughter, Mrs. Lamb, according to the plaintiff in this case, advised him of the trust fund created for his benefit. He expressed surprise, declaring that his uncle had told him he would never make a will. She stated in reply, if his story is to be believed, that if he would not try to break the testament, but aid in sustaining it, she, jointly with her mother and daughter, would make up the difference between "the $75,000 and what [he] would have gotten had there been no will." It is claimed that a like statement was separately made by the widow, Mrs. Bryant, as well as Mrs. Du Sossoit, the other defendants in the proceeding. At that time, the plaintiff had no reason to believe that there was any ground of contest of the will either on account of lack of capacity or because of the exercise of undue influence, knowing only that his uncle had been in bad health, and had stated to him that it was not his purpose to make any written disposition of his estate. He so declared at the hearing before the trial court in the proceeding now under review, stating that he acquired no information which would lead him to believe there was any reason for contest until 1925, after the present difficulty had

arisen. Following the probate of the will, the children of the other deceased brother instituted a proceeding based on the alleged lack of testamentary capacity, but in this the plaintiff refused to join, and filed, under oath, an answer in the orphans' court averring the full competency of William Bryant to dispose of his estate. That litigation was subsequently compromised and the suit withdrawn.

Certain payments, gifts and loans were subsequently made to plaintiff by present defendants up to the time he called, as requested, at the office of the family attorney and executed the following paper: "Received, Philadelphia, January 15th, 1925, from Mary H. Bryant, widow of William Bryant, eleven thousand five hundred dollars which with thirteen thousand five hundred dollars heretofore paid by her to me makes in all the sum of twenty-five thousand dollars received from her and in consideration of which payments I hereby waive all right of appeal from the decree of the register of wills for the County of Philadelphia, admitting to probate the will of said William Bryant and the granting of letters testamentary thereon to the executors therein named, and I hereby ratify and confirm the same and agree to be bound thereby. And further, for the consideration aforesaid, I agree not to appeal from the said decree of probate, or in any way or manner contest the validity of said will." Howard then made no claim of the existence of any other contract, or that he was to receive any sum other than that then paid to him. This paper clearly sets forth his covenant not to contest the will, or to appeal from its probate, or in any way complain of its validity. There was no allegation that it was executed by reason of fraud, accident or mistake, and it is not only the written but the best evidence of any contract in relation to the will which was entered into.

The plaintiff subsequently demanded the payment of a larger sum, based on the net value of one-fourth of the estate, on the ground that the present defendants had, in

June, 1923, promised to so reward him if he did not contest the will, or lend aid and comfort to those who might, which condition he claimed to have complied with. His demand for further compensation was refused, and he then brought this action in 1925 against the widow, her child and grandchild, averring a contract by which the three defendants had jointly obligated themselves to pay him the larger sum mentioned in consideration of his refusal to join in litigation over the will. No averment was made that he had any ground for believing in its invalidity, and, as noted, he knew of no reason for such complaint in 1923, and later so swore in the orphans' court proceeding instituted by other relatives.

His present demand was based on the oral conversations, above referred to, and, in connection therewith, he offered the written paper, which has been quoted in full, as evidence of the fact that there was an agreement to compensate him. He also testified that one of the joint obligors had advised him to sign the document of 1925, though the consideration named therein was for a less amount than claimed, by representing to him that an additional sum would be subsequently paid. This promise was alleged by him to have been made by Mrs. Lamb, but it is not claimed that Mrs. Bryant and Mrs. Du Sossoit, the joint defendants, so agreed, or had knowledge of such an undertaking. He also declared that, upon the refusal of further demands for money, he then made investigation and discovered that evidence might have been secured to show lack of testamentary capacity on the part of the decedent, and thus have justified an attack upon the will. Two witnesses were called at the present trial to show the circumstances under which it was executed. One, a nurse, narrated facts from which it was sought to infer that William Bryant was mentally incompetent to execute the paper probated, but it is to be noticed that she was a witness thereto, and had previously sworn before the register that the decedent was of sound and disposing memory. A second attendant

also testified to facts indicating that the will was prepared and executed because of requests of the defendants, but it is not claimed that they did more than urge that a will be made, without indicating the actual disposition testator should make of his property. If any influence was used, it was limited to the suggestion of the widow that the trust fund of the plaintiff be increased to the amount ultimately given.

The receipt of January 15, 1925, above recited, given to the joint obligor, the widow, was signed and delivered by plaintiff without any claim of a right to further compensation. In it we find an express covenant, on the one side, not to contest the will or appeal from the probate, and, on the other side, to pay, in consideration, a definite sum of $25,000, which amount was duly turned over. The effort is now made to assert an additional understanding, based on an alleged promise of one only of the joint defendants, that more would be paid, as contemplated by the parties in 1923. It is averred that parol evidence to show this further agreement, supplemental to that contained in the paper which was offered in evidence by the plaintiff himself, is admissible, since that writing came only collaterally into the case, and was not the contract directly sued upon, as the earlier oral contract was the matter in issue. Curtin v. People's Natural Gas Co., 233 Pa. 397; Reel v. Oravets, 279 Pa. 147; Garrison v. Salkind, 285 Pa. 265, and Hanauer v. National Surety Co., 279 Pa. 345, are relied upon to sustain this proposition, and these authorities correctly state the law where the facts are as set forth therein, but they have no application here.

The trial court was of opinion that the oral proof offered to show the further promise of Mrs. Lamb was not here receivable, and struck it from the record because it modified the declaration of the real understanding as disclosed in the receipt of January 15, 1925, and no accident, fraud or mistake was averred or proven. There is no merit in the suggestion made on argument

that, though the writing did not come collaterally into the case, since it was introduced by the plaintiff himself as evidence of an agreement, and is to be treated as one in issue between the parties, yet the affidavit of defense admitted the existence of an additional oral undertaking. Even if any averments appearing therein lead to such inference, such cannot be considered here, since the affidavit was not offered in evidence and forms no part of the record: Buehler v. U. S. Fashion Plate Co., 269 Pa. 428.

It is undoubtedly true that where it is conceded or proven that a writing does not properly or fully state the agreement between the parties upon any given point, the written provisions in regard thereto may be explained or supplemented, and the true state of facts established by parol evidence: Ward v. Zeigler, 285 Pa. 557; Cridge's Est., 289 Pa. 331; Kerr v. McClure, 266 Pa. 103; Federal Sales Co. v. Farrell, 264 Pa. 149. Likewise, if the consideration does not affect the covenants of the parties, parol evidence to show the real amount to be paid is properly receivable: Cridge's Est., supra. Where, however, a receipt is given to all of the parties, or to one of them, as here, in case of a joint obligation, in which is set forth the understanding, and declaring what the covenants are, it is the only evidence of the agreement and cannot be set aside unless fraud, accident or mistake is averred and proven. If the terms of the covenant are put in a writing, complete within itself, and couched in such terms as to disclose a complete legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed to represent the whole contract of the parties and the extent and manner of their undertaking: Gianni v. Russell, 281 Pa. 320. The test to determine whether an alleged parol agreement, by which it is proposed to modify the expressed understanding, comes within the field embraced by the writing, is to compare the two and determine whether parties, situated as were the ones to the

contract, would naturally and normally include the one in the other if it were made: Wagner v. Marcus, 288 Pa. 579.,

In the present case, the original parol contract asserted was to give to the plaintiff an additional sum so that his share in the estate would equal the one-fourth he would have received had deceased died intestate. His covenant was not to contest the will, and the covenant of the joint defendants was to pay a definite sum in consideration thereof. The obligation of plaintiff was later defined in the executed written receipt, and the contractual consideration there expressly set forth. Plaintiff agreed not to contest "in consideration" of the payment made. The understanding detailed is not to be set aside in the absence of fraud, accident or mistake, nor can its terms be modified because of a collateral promise alleged to have been made by only one of the three promissors, the suit being based on a joint contract. Clearly, such a supplemental understanding would not bind two of the defendants in the absence of ratification, and, therefore, the present joint action against all three must fall: Bush v. Stowell, 71 Pa. 208; Shiffer v. Mosier, 225 Pa. 552.

"In consideration of the payment" made January 15, 1925, by Mary H. Bryant, the widow, the plaintiff agreed not to contest the will or appeal from its probate. This plainly released her from any liability on account of the parol agreement of 1923, whatever it was, and where one party to a joint contract is discharged, there can be no recovery as against the other in a suit on the joint contract: 1 Williston on Contracts, 628, 633; 7 C. J. 575. In view of the receipt of January 15, 1925, no attack could be made upon the validity of the will even though the other parties benefited as a result of the promise then made to Mrs. Bryant.

It was urged, however, that this might be a satisfaction of the claim, in so far as the widow was concerned, without affecting the liability of the other defendants.

This loses sight of the fact that the suit is a joint one, and if no recovery can be had against one none can be had against the others: 3 P. & L. Dig. Dec. 3995. The contention is made that a party may settle with one joint party without discharging the liability of the others, and attention is called to the Act of March 22, 1862, P. L. 167, which, by section 5, regulates the rights of joint debtors, as the earlier sections did of partners, and wherein it is provided by section 2 that one debtor can make composition or compromise with one, and "may take from the creditor or creditors with whom he may make the same, a note or memorandum in writing, exonerating him or them from all and every individual liability incurred by reason of such connection with such partnership, which note or memorandum may be given in evidence by such debtor or debtors in bar of such creditor's right of recovery against them." If the intention clearly appears to discharge one of the joint debtors only as to his share of the obligation, the others will not be relieved of payment of their proportion of the debt (Burke v. Noble, 48 Pa. 168), but the present case shows not a satisfaction of a claim against one individual, Mrs. Bryant, but a covenant not to contest the will itself, or appeal from its probate.

Even though parol evidence could have been admitted to show a supplemental promise to make further payment by one of the joint debtors, unknown to the others, there still remains the question as to whether or not there was any consideration for the original parol contract of 1923, sufficient to sustain an adverse action, or whether any payment made as a result of the conversations then had was other than voluntary. When plaintiff made his original promise to refrain from contesting the will, he had no reason for instituting such a proceeding. His only information as to testamentary incapacity, already referred to, was not obtained until after his final receipt to Mrs. Bryant. It is plain from his testimony that he had not brought a suit, nor were there

any grounds for litigation, which he claimed to have relinquished, as a consideration for a promise to pay, and therefore it was not enforceable: Kesler's Est., 143 Pa. 386; Patterson's App., 116 Pa. 8. The mere promise not to institute legal proceedings, when there is no bona fide foundation for the same, gives no right of action on a contract to pay in consideration of refraining from so acting: Kesler's Est., supra. No proceeding had been begun, or threatened, in good faith: Silver v. Graves, 210 Mass. 26, 95 N. E. 948; Mackin v. Dwyer, 205 Mass. 472, 91 N. E. 893. Release from mere annoyance, unfounded or unjustified litigation, does not furnish valuable consideration: Logan v. Mathews, 6 Pa. 417; Moore v. Moore, 64 Pa. Superior Ct. 192; Moore v. Moore, 255 Fed. R. 497.

Though an agreement not to contest a will is not invalid, as against public policy, yet the promise of forbearance must have some basis to sustain an undertaking to compensate. As was said in Edwards v. Bough, 11 M. & W. 641, 152 Eng. Reprint 963: "If no doubt existed as to the validity of the will, it was her legal duty not to have interposed. It could not be tolerated that anyone should enforce a promise to pay money, the sole consideration of which was an exemption from a threatened suit for which there was not the least foundation. As well might a party be allowed to recover upon a contract to pay so much money in consideration that the plaintiff would not slander the defendant, as that he would not make a false clamor in court against him. To make such consideration valid, there must be some legal right abandoned or postponed, or some obligation imposed by the contract beyond what the law, without it, enjoins as a duty."

It follows that, if the claimant had no right to sue in the first place, he has by his forbearance given up nothing, and, if no reasonable ground for controversy existed when the promise was made to refrain from contesting the will, or using influence to prevent its probate, it is

not legally enforceable: Conklin v. Conklin, 165 Mich. 571, 131 N. W. 154; Prater v. Miller, 25 Ala. 320. In Montgomery v. Grenier, 117 Minn. 416, 136 N. W. 9, where the right to recover was denied, it was declared: "With no basis in fact for a contest and no reasonable ground for believing that a contest might rightfully be instituted and maintained, the agreement to refrain from so doing furnishes, within the rule of our decisions, no sufficient consideration for the promise of defendants to give him a part of their legacy." To the same effect is Crawford v. Engram, 157 Ala. 314, 47 So. 712.

If one, having an interest, desists from a contest where there are supposedly just grounds for making the same, even though he could not be successful, such a contract may be sustained, and the real question rests upon the bona fides of the proposed litigation (Blount v. Wheeler, 199 Mass. 330, 65 N. E. 477; Staab's Est., 166 Wis. 567, 166 N. W. 326), but in the present case no proceeding was imminent or threatened, nor had the plaintiff the slightest ground for believing either in the lack of testamentary capacity of the decedent, or the exercise of undue influence, which would furnish the basis of an honest complaint as to its validity, and had stated, under oath, in a judicial proceeding, as above noted, that no such reason existed. The promise, if made to plaintiff, was a voluntary one, without valuable consideration, and any undertaking to pay for reason of such an understanding could not be legally enforced. If sums were advanced later they were voluntary gifts.

Another claim, presented by plaintiff, in alleging a promise to pay to him one-fourth of any undiscovered assets of the testator which he might be able to locate, may be briefly adverted to. It was set forth in the statement that a check, drawn in blank by the testator, and undoubtedly signed by him, had been filled in by his widow and cashed before his death, and the amount thereof was not included in the inventory. This is doubtless so, but it was not an asset of the estate which plain-

158

tiff discovered, and first made known by him to the legatees, the amount having been withdrawn from the funds of the decedent during his lifetime for a valid purpose, and under his direction. "A signature on a blank paper, delivered by the person making the signature in order that the paper may be converted into a negotiable instrument, operates as a prima facie authority to fill it up as such for any amount": Act May 16, 1901, P. L. 194, section 14. The instrument had been admittedly signed by Bryant and delivered to his wife so that she might secure such funds as were desired during his illness. It was filled up by her and properly cashed before his death, and by his authority, as affirmatively appears. The money withdrawn never became property of the estate. Even if the contrary was true, the so-called newly-discovered asset was not called to the attention of the promisors and added to the assets of decedent, in which case alone, under the testimony of plaintiff, he was to be paid. The right to recover on this claim, though referred to in the paper books of appellant, was not here insisted upon in oral argument.

An examination of the whole record convinces us that a proper conclusion was reached in this case by the entry of a compulsory nonsuit as to both of the demands presented.

The judgment is affirmed.