**McINTOSH et al. v. LEISK.**
No. 8453.

Circuit Court of Appeals, Fifth Circuit.
March 4, 1938.

SIBLEY, Circuit Judge, dissenting.

———————

S. P. Jones, of Marshall, Tex., and A. Garwood Schluter, of Jefferson, Tex., for appellants.

H. P. Smead, of Longview, Tex., and Edward L. Peteet and Myron G. Blalock, both of Marshall, Tex., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

## HUTCHESON, Circuit Judge.

Appellants are the widow and some of the children of Colbert McIntosh, deceased, a negro, who in his lifetime acquired, and who died intestate as to, 264 acres of land in Marion county, Texas. When the matters in suit transpired, it had acquired a speculative value as oil land. They brought this suit on September 21, 1936, to cancel, and remove as a cloud on their title, a purported mineral deed dated July 17, and recorded October 7, 1935, which, for a recited consideration of $1,634, purported to convey to appellee a full one-fourth undivided mineral interest in the entire tract.

Their claim in general was that though the instrument never became effective as a deed, and no consideration was ever paid therefor, appellee, after plaintiff had by affidavit of record given public notice that all negotiations with him were at an end, and that the purported deed was without consideration and of no force and effect, had recorded it before all the heirs had signed, contrary to the understanding with which plaintiffs had signed, that it would not be delivered nor become effective unless and until signed by them all.

In amplification of the claim plaintiffs alleged that in July, when the negotiations commenced, the mineral interests which were the subject of it were of an advancing speculative value, and that though defend-ant had agreed to either obtain the signatures of all the heirs, or to return the instrument within two weeks, he took no action to bring the matter to a head, but speculating on a rising market, neither procured the signatures of the other heirs, nor returned the deed, and when two months later plaintiffs by affidavit gave public notice that all negotiations were off, the value of the mineral interests had greatly advanced.

The defense was an admission that though the deed had been drawn for all the heirs to sign, and it purported to, and if effective did, convey an entire one-fourth interest in the whole tract of land, and not merely one-fourth of each grantor's interest in it, and though it was intended and contemplated that all the heirs should be gotten to sign, no definite time had been fixed in which this should be done, but defendant was to work it out when and as he could. There was the further claim that at the time each signed the deed it was agreed and understood by each of the signers that if all the heirs could not be gotten to sign it the deed would still be effective as to each of the signers as to one-fourth only of his interest in the tract.

Admitting that the consideration had not been paid, the failure to pay it was defended on the ground that it was not until October, nearly three months after plaintiffs had signed the deed, that defendant was able to ascertain the interest of each of the signers in the land, and that the money was not paid at that time because of the existence of the affidavit plaintiffs had filed of record, declaring that the deed was void and without effect as to them.

As to the delivery and recording of the deed, defendant admits that the deed was not to be delivered or recorded until the transaction was fully concluded, and the money paid, but gives as his reason for fil-ing it for record in October that he then learned of the filing of the affidavit, and felt that he should file it to protect his rights to the minerals.

In defense of the charge that the consideration had not been paid even up to the time of the filing of suit, defendant answered that in November he had tendered each of the plaintiffs the amount due them for one-fourth of their interest in the land, and that they had refused the tender. There was no claim by defendant, however, that he at any time had deeded back, or offered to deed back to each plaintiff the excess over one-fourth of his interest in the 264-acre

tract which the deed as drawn, in law, conveyed.

On the trial plaintiffs' witnesses, including some of the heirs who had refused to sign, fully corroborated plaintiffs' claim that the instrument was not signed or delivered as a deed, but merely as evidence of an agreement that it should become effective as a deed when all the other heirs had signed, and the consideration had been paid. These witnesses supported too, plaintiffs' claim that a definite time, two weeks, was fixed for getting all the signatures or returning the deed. They also supported their claim, that unable to get appellee either to finish the trade or to turn back the deed, they had filed the affidavit declaring the whole matter off. They testified, too, that when in October, appellee undertook to have plaintiffs retract the position taken in their affidavit that the trade was off, and to continue negotiations with him, the value of their interests had trebled, and that in November, when the defendant undertook to make a firm tender of an unnamed amount, without requiring a retraction of the affidavit, the value of their interest had quadrupled.

Defendant's evidence in no manner disputes plaintiffs' testimony as to the rising speculative value of their interests. It particularly does not dispute the testimony that in October, when defendant first made a qualified offer to pay, the value of the land had trebled, and in November had quadrupled. Neither does it dispute plaintiffs' claim and evidence that when they signed the deed it was clearly understood that it was not to be delivered, and was not to take effect as a deed until the whole matter was concluded. Indeed, defendant himself testified that he told plaintiffs they need not worry about his taking advantage of them; that since he was a stranger to them their uncle should keep the deed until all matters were settled. Defendant and his witnesses, however, his partner, the notary he employed generally to get deeds for him, the uncle of plaintiffs, whom he had employed to help him put the trade through, all denied that there was an agreement that the matter should be closed up in two weeks, or in any specified time. All of them testified that no time at all was fixed for closing. But Leisk himself admits that after two weeks had passed, plaintiffs demanded, as a condition of closing the trade, that they be paid $35 an acre, instead of the $25 the deed called for. The defendant and his witnesses, do swear that it was understood with each of the parties that if the other heirs did not sign, the trade was not to fall through as to those who had signed, but was to be consummated as to each, as to one-fourth of his interest in the tract. Against this there is the positive testimony of plaintiffs and their witnesses that no such agreement was made, supported by the fact that the deed was not so drawn, and the fact that since the signers of the deed together own more than one-fourth of the tract, the deed as signed, if given effect, would and did convey to defendant not one-fourth of each signer's interest in, but a full undivided one-fourth of the tract.

Upon the conclusion of the testimony the District Judge, concurring with defendant, found that the agreement was as the defendant had stated it; that plaintiffs had not co-operated with and aided the defendant in obtaining the signatures, and the information as to the interests, of the other heirs; that defendant's conduct had been consistent, plaintiffs' inconsistent with equity throughout, and that plaintiffs should be denied the relief they sought, upon defendant's depositing in the registry of the court the amounts due the plaintiffs at $25 per acre for one-fourth of the interest of each of the land in controversy. Finding, however, that the deed as drawn did not express the contract of the parties, he permitted defendant to amend his pleadings to secure its reformation, ordered it reformed, and as reformed, required plaintiffs upon the payment to them of the amounts set out in the decree, to specifically perform the contract.

We do not think that this will do. We think the equities are with plaintiffs against the defendant. We think the District Judge incorrectly apprehended the effect of the testimony, drew conclusions from it which were not supported by it, and which lead to an inequitable result.

█ Though we do ordinarily attach great weight to the findings of a chancellor, this court is not bound by them, and if, upon a review of the evidence, it reaches contrary conclusions, it will, if the findings of the chancellor appear clearly wrong, give its own conclusions effect. Kellahin v. Henderson, 5 Cir., 81 F.2d 128; Holmes v. Cummings, 5 Cir., 71 F.2d 364. When the evidence of what was done and left undone is viewed in the light of the speculative nature of the interest which was the subject-matter of the dealings in question, we are not in any doubt that plaintiffs' version of

the matter is the reasonable, defendant's, the unreasonable one. Putting to one side the legal difficulty in which defendant finds himself, when he undertakes to vary, and add by parol to the terms of a contract which has been carefully and completely integrated into a writing as formal as a deed, South Florida Lumber Mills v. Breuchard, 5 Cir., 51 F.2d 490, 493, 494, Bryant v. Bryant, 295 Pa. 146, 144 A. 904, at page 906, and taking into consideration all the evidence, including that seeking to vary the contract, we think the conclusion inescapable, that the only agreement defendant ever had with plaintiffs was that testified to by plaintiffs and recited in the deed, that for the consideration named in it plaintiffs, and the other heirs of Colbert McIntosh therein named, would, if defendant could obtain their signatures, together convey to the defendant a one-fourth undivided mineral interest in the land the deed described.

In this view, it is immaterial whether two weeks was fixed, as plaintiffs claim, or defendant had, as he claims, an indefinite time for obtaining all the signatures, for it is not claimed that defendant ever did obtain them all.

■ In this view, appellants were, of course, clearly entitled to the decree they sought. But if we could agree that defendant could and did, in variance and in contradiction of the agreement, as the deed had integrated it, add to it by parol the agreement he testified to, that not only collectively, if the other heirs joined, but individually if they did not, each plaintiff had agreed with him to convey one-fourth of his interest in the tract, we could not agree with the District Judge's conclusion, that defendant was entitled to a specific performance of that agreement. For the evidence is conclusive that instead of, as defendant was required to do under the conditions then existing, proceeding promptly to bring the matter to a conclusion, he did nothing to conclude it until in October, after plaintiffs by their affidavit filed in September, had given notice of the termination of the negotiations, and then all that he did was to demand a retraction of the affidavit as a condition to paying plaintiffs for the interest he claimed to have contracted for. Having, at some time not disclosed in the record, procured possession of the deed from plaintiffs' uncle, with whom it had been escrowed, he

then, in violation of the understanding that there was to be no delivery until the trade was closed, placed it of record where it has remained, clouding plaintiffs' title by its recitations of the payment of consideration, when none was paid, and its conveyance, as to each plaintiff, of a greater portion of his interest than, even according to defendant's own testimony, each plaintiff intended to convey.

Finally, neither in October, when the retraction of the affidavit was demanded as a condition to paying plaintiffs anything, nor in November, when their interests having quadrupled in value, defendant undertook to make a firm tender to each plaintiff of the amount defendant conceived due him, did defendant relinquish, or offer to relinquish, to plaintiffs by a deed of correction, from them to him, or a deed from him to them, the excess of the interests their deed had conveyed him over what they had intended to convey and what defendant was tardily offering to pay them for.

■ Specific performance of a contract is not a matter of right. It is never granted unless it seems equitable to do so. Rushing v. Mayfield Co., 5 Cir., 62 F.2d 318, 319; Mandeville & Thompson v. Danciger, 5 Cir., 62 F.2d 130; Giddens v. Estero Bay Estates, 5 Cir., 18 F.2d 265.

All the equities in this case are with the plaintiffs; none with the defendant.

The judgment is reversed, and the cause is remanded, with directions to grant plaintiffs the relief they ask.

Reversed and remanded.

SIBLEY, Circuit Judge (dissenting).

I think the District Judge, who heard and saw the witnesses testify, was justified in believing those for the defendant. The deed did not integrate the whole contract, but only its application in the expected event that all heirs should become signers. As all did not sign, the phase of the contract appropriate to this latter contingency could be enforced by modifying the deed so as to convey one-fourth of the interest of each signer, for a proportionate consideration. Payment of this consideration was promptly tendered so soon as it became apparent that all would not sign. There is no insuperable obstacle to reforming the deed so as to make it express the applicable phase of the oral agreement.