W. H. MILTON, *Plaintiff in Error,* v. M. R. BURTON, *Defendant in Error.*

Opinion Filed March 19, 1920.

1. The "parol evidence rule" is a rule of substantive law because it deals with the question of where and in what sources and materials are to be found the terms of a legal act.

2. When a legal act is reduced into a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act, and the interest of the parties is the controlling consideration in determining whether a particular memorial should be deemed to embody the legal act covering a certain subject of negotiation.

3. Where it appears that the particular element of an alleged extrinsic negotiation is not dealt with at all in the writing, it is presumed that the writing was not meant to represent all of the transaction on that element and parol evidence in proof of such element should be received; especially when the writing affirmatively shows that it was not intended to embody all of the transaction.

4. A written contract whereby a general agent of a life insurance company employed a sub-agent, failed to state under what circumstances notes might be accepted for the amount of the first premium on policies sold, but expressly stated that the sub-agent's duties were to obey the rules, instructions and regulations of the general agent in addition to the duties enumerated in the writing; it was therefore competent for the parties, at or before the execution of the writing, to agree that the sub-agent might accept notes for the first annual premium on policies sold by him, but that he should be liable for the portion of such premium due the company, and oral testimony of such agreement was admissible.

A Writ of Error to the Circuit Court for Jackson County; C. L. Wilson, Judge.

Judgment affirmed.

*Paul Carter,* for Plaintiff in Error;

*John H. Carter,* for Defendant in Error.

REAVES, Circuit Judge.—The defendant in error, M. R. Burton, whom we shall herein call the plaintiff, sued the plaintiff in error, W. H. Milton, whom we shall herein call the defendant, in the Circuit Court of Jackson County. From a verdict and judgment in favor of the plaintiff a writ of error was sued out to this Court.

It seems that the plaintiff, M. R. Burton, was a general agent for the Florida Life Insurance Company and at a later date was general agent for the Empire Life Insurance Company; that he employed one S. W. Clark to act in the capacity of sub-agent; that a written contract was made between Burton and Clark dated June 14, 1911, relating to said employment and a bond was given dated June 29, 1911, signed by the defendant, Milton, which bond reads as follows:

"Know all men by these presents, that I, S. W. Clark, of Tallahassee, Florida, as principal, and W. H. Milton and ............................................ as sureties are holdèn and bounden unto M. R. Burton, General Agent of the Florida Life Insurance Company, a corporation, under the laws of the State of Florida, in the sum of Five Hundred Dollars, for the payment of which to the said M. R. Burton, his heirs, executors, administrators and assigns, we hereby jointly and severally bind ourselves, our executors, administrators and successors firmly by these presents:

"Whereas, the said principal on the 14th day of June, A. D. 1911, executed a certain contract with said M. R. Burton, General Agent as aforesaid, to act as Agent for the said Company, as provided in said contract, reference to which is hereby made for the full terms and conditions thereof and the same made a part hereof as though fully set forth herein; and,

"Whereas, said contract provides in paragraph 8 thereof that: 'The Agent shall execute to the General Agent and maintain a bond with satisfactory surety in the sum of Five Hundred Dollars;'

"Now the condition of this obligation is such that if the said principal shall at all times hereafter, so long

as this contract shall remain in force, faithfully, honestly and diligently perform and discharge all his duties as such agent and duly and faithfully account to the said M. R. Burton for all moneys, notes, goods, policies of insurance and property whatsoever for or with which the said Agent may be accountable or which may be chargeable to said Agent as aforesaid, and pay all indebtedness said Agent may make with or owe said M. R. Burton, then this obligation shall be void; or otherwise shall remain in full force and effect.

"In Witness Whereof the said Principal has hereunto set his hand and seal, and likewise the said sureties this 29th day of June, A. D. 1911.

Witnesses:

| Lossie Holden | S. W. Clark      (Seal) |
| | Principal. |
| Lossie W. Holden | W. H. Milton     (Seal) |
| | Surety." |

The obligation of Milton under this bond forms the basis of the suit as alleged in the first count of the declaration. The second court of the declaration is based upon a similar bond relating to Clark's employment under Burton as general agent of the Empire Life Insurance Company. No error is assigned and argued relative to the second count which is not fully covered by the errors assigned and argued relating to the first count, hence it is unnecessary to set out herein the bond forming the basis of the second count. It also seems unnecessary to quote at length the written contract referred to in the first bond. Suffice it to say that by said contract Clark agreed to engage in the service and employ of Burton as "special agent in West Florida for the said Insurance Company, to give his best services to the in-

terest of the business," etc., to solicit insurance, "to collect, as far as practicable, when authorized to do so, all premiums payable on account of said insurance," to turn over all collections, policies, etc., to Burton. As compensation he was to receive a stated percentage of the first annual premium on each policy written by him. Approprite pleas were filed putting in issue the breach of obligation alleged and also claiming full performance by Clark and payment by him of all sums due Burton. There are several assignments of error, but they present only two questions: First, whether the "parol evidence rule" was violated in the trial; second, whether the court erred in giving a certain instruction requested by the plaintiff. The plaintiff was allowed over defendant's objection to testify that he had a parol understanding with Clark whereby Clark was permitted to take notes from his customers for the amount of the first premium upon policies written, that upon receipt of such notes by plaintiff Clark should be charged with the percentage of premium due the Company, and then upon the payment of each note credited with the full amount paid. The effect of this arrangement was to make Clark liable for the percentage due the Company, regardless of whether any particular note should be paid or not. A number of the notes were not paid, and the Company's percentage thereon makes up a large portion of the amount sued for. The plaintiff testified that he was liable to and paid the Company for these items, and that Clark had not paid him. The argument of counsel for defendant is that the contract made a part of the bond does not authorize such transactions, that the obligation of the defendant as surety on the bond was limited to the terms of the written conract, and that, by allowing the testimony above stated the trial court violated the rule that "parol, contem-

poraneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." The testimony as to when the oral agreement was made with reference to the time of the writing is not very clear. Plaintiff says, "We had the verbal understanding subsequent to the contract." Again, "We had the verbal agreement all during our relation." And again, "We had the agreement really before the contract was made."

But few legal problems have arisen more often or given more difficulty in their application to the varying facts of different cases than the one here involved, popularly known as the "parol evidence rule." The legal fraternity is indebted to Professor Wigmore for his superior treatment of this subject. His orderly, clear cut, logical presentation of the rule, with its aspects and the reason therefor, goes far toward dissipating the mists which so often obscure the rule in its application to facts in hand. We are not justified in here quoting at length from Wigmore, nor in a lengthy discussion of his wonderfully helpful treatise upon this subject. (See Wig. on Ev., page 3408 *et seq.*) Among other things he makes the point that the rule "is not a rule of evidence because it has nothing to do with the probative value of one fact as persuading us of the probable existence of another fact. It is a rule of substantive law because it deals with the question where and in what sources and materials are to be found the terms of a legal act." (page 3409). He states the general rule as follows: "When a legal act is reduced into a single memorial, all other utterances of the parties on that topic are legally immaterial for the purpose of determining what are the terms of their act." (Page 3409).

The inquiry arises, under what circumstances should the "memorial" be deemed to embody the "legal act" covering a certain subject of negotiation? The answer, when the parties so intended. (Pages 3426, 3428, 3443.) How, then, is this intent to be ascertained? Not always, of course, by any one rule. He names several matters to be considered, but says: "The chief and most satisfactory index for the Judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation." (Page 3427).

Applying these principles to the case at bar it seems clear that the original contract between the plaintiff and S. W. Clark was not intended to, and does not deal with the circumstances under which Clark might accept notes in payment of the first premium on policies sold by him, nor, if notes should be taken, in what manner the percentage of such premium due the company should be paid. The only reference to such notes in the contract is as follows: "In all cases where notes or other obligations or any renewal thereof are accepted for the extension of the time for the payment of any premium no commission should accrue or become due until said notes or other obligations are paid in cash to the party of the second part; and it is understood and agreed that the costs of collection (by suit or otherwise) shall be deducted from the commission upon notes on account of which the expense and costs are incurred.

Obviously the quoted clause, while recognizing by reference that notes might be accepted, did not, of itself,

authorize them to be accepted or taken by Clark, but it had the definite purpose of fixing the time when Clark's commission would become due in cases where notes should be accepted. Moreover this contract, on its face, bears other evidence that it does not cover all subjects of negotiation between the parties. After enumerating a number of powers expressly denied to Clark and which he agreed not to exercise, the instrument continues in these words: "His duties being simply such as are described in this agreement, and in the rules and instructions of the said party of the second part."

Here is an express recognition that there was, or might be, "rules and instructions" of the said party of the second part, which, together with the duties "described in this agreement" (written contract) constituted the measure of Clark's obligation. And in another place Clark agrees "to be governed in all respects by the instructions and regulations of the party of the second part."

Again the writing says: "It is understood and agreed that the party of the first part will not, at any time while indebted to the party of the second part, should such indebtedness arise," enter into the employment of another, etc. By this clause it is recognized that Clark might become indebted to the plaintiff and yet no obligation is laid by the writing upon the plaintiff to extend Clark any credit, and no means is stated by the writng whereby Clark might become indebted to the plaintiff except that he agrees to collect premiums when and if authorized to do so. But no authority to collect premiums is contained in the writing.

The parties to this instrument have both testified that plaintiff advanced to Clark various sums of money. Clark says that the plaintiff was to advance him $25.00

per week, and he drew that amount, and possibly more on some occasions. In fact the bill of particulars attached to the declaration is made up very largely of items so advanced, and almost entirely of advances so made, together with charges against Clark for the percentage premiums due the Company in cases where notes were taken and not paid.

From the portions of the contract quoted and referred to it is manifest that the parties did not intend to put all their engagement in writing, but that much of the details of the execution of the written contract were left subject to independent agreement, or, to use their language, "rules," "regulations" and "instructions." The language of the bond also shows like intent. The bond is obviously broader than the written contract to which it refers. Note the language: "Faithfully, honestly and diligently perform and discharge all his duties as such agent, and duly and faithfully account to the said M. R. Burton for all moneys, notes, goods, policies of insurance and property whatsoever for or with which the said agent may be accountable, or which may be chargeable to said Agent as aforesaid, and pay all indebtedness said Agent may make with or owe said M. R. Burton." This language is quite comprehensive. It anticipated a possible indebtedness to plaintiff. It covered the trust arising from the relation, and is not confined or restricted within the letter of the written contract. When it appears that the parties to a written contract did not intend that the writing should embody the details of its execution, an independent agreement as to such details made at or before the writing was executed may be shown, 13 C. J. 598.

In Gillett v. Bowman, 43 Mich. 477, 5 N. W. Rep. 661, the Supreme Court of Michigan passed upon a contract

for the sale of timber to be paid for by measurement. The contract was in writing. The opinion was written by Judge COOLEY, and the following extract explains the holding: "The chief controversy between the parties on the trial related to the measuring of the paving timber. This timber was shipped to Detroit and Chicago, and defendants claimed that the cargoes were to be measured at the ports of destination, and that they were to pay according to the returns of the measurement; and they offered evidence that such was the understanding of the parties when the contract was entered into. The circuit judge excluded this evidence on the ground that it would vary the contract, and permitted the plaintiff to give evidence of the measurements and estimates of quantity made by himself in loading the vessels.

"We think the excluded evidence was not objectionable on the ground stated. It did not tend to vary the conrtact; it did not affect any of its terms. The loading of timber was to be paid for according to quantity, and it was proposed merely to show what understanding the parties had as to the method of arriving at the quantity. It is perfectly competent for parties to agree upon any such matter of detail in the execution of their contracts, as well at the time of contracting as afterwards. It is agreeing only upon what shall be the evidence of performance."

The following quotation from the Iowa Supreme Court is also self-explanatory: "The defendant introduced in evidence a written contract * * * for the rent of premises to the plaintiff for one year. This contract further stipulates that plaintiff might buy the premises at any time during the terms of the lease for the sum of $2,000.00, and provides for the times and terms of payment. It is silent respecting any provision for the

payment for improvements in case the plaintiff should not purchase the premises. The defendant, in effect, asked the Court to instruct the jury that this written agreement superseded all prior verbal agreements in regard to repairs and improvements upon the property. The refusal of the court to so instruct is the principal error complained of. The action of the court was right. The contract purports only to be a contract of lease with an agreement that plaintiff might purchase on certain terms. It does not purport to make any provision as to the rights of the parties in case plaintiff should not purchase. It cannot, therefore, by any manner, affect plaintiff's right to be paid for improvements before that time made under a distinct contract." Kempsy v. Metcalf, 61 Iowa 320. 16 N. W. Rep. 146.

Since the written contract failed to state under what circumstances notes might be accepted for the amount of the first premiums on policies sold, but expressly stated that Clark's duties were to obey the rules, instructions and regulations of Burton in addition to the duties imposed by the writing, it was competent for the parties, at or before the execution of the writing to agree that Clark might take notes for the first annual premium on policies sold by him, but that he should be liable for the portion of such premiums due the company, and oral testimony of such agreement was admissible.

In view of the authorities cited it seems clear that the trial court can not be held in error under any aspect of the case, but if we treat the testimony as tending to show that the alleged verbal agreement was made after the written contract there can be no argument. Wigmore on Evidence, p. 3442; Wilson v. McClenny, 32 Fla. 363, 13 South. Rep. 873.

We now come to the second contention, which is that the court erred in instructing the jury at the request of counsel for plaintiff as follows: "Under the bonds sued on the court charges you that the defendant, Mr. Milton, will be liable to the plaintiff for any indebtedness which Mr. S. W. Clark made with or owed to Burton in the line of his agency, as well as for any moneys for which said Clark might owe the insurance companies within the scope of this contract."

Regardless of whether this charge is technically correct or not, it is manifest that it could not have harmed the defendant. As we have already indicated the charges against Clark consisted almost, if not entirely, of money advanced to him by the plaintiff and of the portions of the first premiums due the company in cases where Clark accepted notes for such premiums, and failing to collect them, Burton paid the companies. Therefore nothing was due the companies, and there is no suggestion in the evidence of any items of indebtedness except such as were due the plaintiff arising out of the employment guaranteed by the bonds sued upon.

For the reasons stated the judgment should be affirmed.

PER CURIAM.—The record in this cause having been considered by this Court and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment herein be and the same is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.