**COLLEGE OF THE VIRGIN ISLANDS, Plaintiff**
**v.**
**VITEX MANUFACTURING CO., LTD., Defendant**

No. 28-1965
Municipal Court of the Virgin Islands
Div. of St. Thomas and St. John
May 4, 1965

PETER J. O'DEA, Assistant Attorney General, *for plaintiff*
RUSSELL B. JOHNSON, *for defendant*

MICHAEL, *Municipal Judge*

The plaintiff, the College of the Virgin Islands, seeks to evict the defendant, Vitex Manufacturing Co., Inc., tenant, from property now owned by the said College, Building No. 60, Bourne Field, which property it acquired by Quitclaim Deed from the United States of America, acting by and through the Secretary of Health, Education and Welfare, on the grounds that by conditions of the deed of con-

veyance to the plaintiff, the plaintiff was required to give notice to quit the premises to the occupants of the same, which notice to quit had been given on August 12, 1964, to be effective as of January 12, 1965, and that it needs the property for its own use.

In its answer defendant denies each and every allegation of plaintiff, except as to what it admitted in its affirmative defenses.

In resisting eviction, defendant relies on several grounds:

1. That defendant is in possession of the premises by virtue of an agreement dated September 19, 1961, executed on behalf of the Virgin Islands Corporation (VICORP) by the President of said corporation, which gave the defendant the benefit, use and possession from November 1, 1961, to June 30, 1969, subject to revocation under certain circumstances;

2. That in reliance upon representations made to defendant by VICORP with respect to the duration of the agreement, defendant made certain expenses in capital and labor in excess of $286,000 and entered upon an agreement with the said VICORP to pay a minimum of $450 per month for ten years for power, whether used or not, and as a consequence the plaintiff is estopped to deny the defendant the privilege to continue the use permitted by the agreement to the extent reasonably necessary to realize upon the expenditures;

3. That no tender has been made by plaintiff to indemnify defendant for its damages which it would sustain by vacating the premises, which is in excess of $500,000;

4. That at the time of signing the agreement it has a collateral agreement or contract with VICORP that the written agreement would not be revoked except in the event of a national emergency, and none has existed since September 19, 1961, which representation it contends was part of the consideration for the entire agreement;

5. That by the deed from the Secretary of Health, Education and Welfare, the College took title "subject to any and all existing easements, rights of way, reservations, restrictions and servitudes whether of record or not . . .", and that the agreement between defendant and VICORP is in fact a servitude, of which the College

37

had knowledge, and the rights of the College is bound by all agreements and representations made to defendant by VICORP;

6. That bringing eviction laid down by the Secretary of Health, Education and Welfare in spite of representations by VICORP and in violation of the agreement, constitutes a denial of due process, since other "licensees" are in possession of premises under permits similar to the one involved in this action, and to maintain this proceeding deprives defendant of equal protection of the law.

The pertinent facts of the case are as follows:

On May 8, 1964, the United States of America, owner of the property in question, acting by and through the Secretary of Health, Education and Welfare, pursuant to power and authority vested in him, deeded to the College of the Virgin Islands for "educational purposes . . ." and "for no other purpose", certain properties, including Building No. 60, occupied by the defendant, Vitex Manufacturing Co., Inc., subject to any and all existing easements, rights of way, reservations, restrictions and servitudes, whether of record or not, including, but not limited to certain described easements, naming them, in which defendant was not included.

The deed further recites that in the event of a breach of any of the conditions set forth in said agreement, whether caused by legal or other inability of the plaintiff or its successors, or assigns, to perform any of the obligations set forth, title and interest in and to the property shall, at the option of the grantor, revert to and become the property of the United States of America.

On September 19, 1961, prior to the execution of this deed, an agreement was entered into between the Virgin Islands Corporation, acting for and on behalf of the United States of America, called the Permittor, and Vitex Manufacturing Corporation, Inc., called the Permittee.

The Permit provides, among other things, that the Permittee shall have the benefit, use and possession of the premises, Building No. 60, located at the former Marine

38

Corps Facility, and known as the Sea Plane Hangar, beginning November 1, 1961, and continuing until June 30, 1969, "unless the Agreement is terminated pursuant to provisions contained therein".

It also provides that the use of the premises is for manufacturing, processing and conversion of textiles and fabrics; that the rent is at $886 monthly, in advance.

Besides the above, there are other provisions, but the one to which this case addresses itself specifically is the one giving the Permittor the right to revoke the Permit at anytime, with or without notice. The entire paragraphs read as follows:

"2. IT IS EXPRESSLY UNDERSTOOD by the parties hereto that notwithstanding any other provision of this Agreement, the Permittee may at any time, following 90 days written notice to the Permittor (60 days unless otherwise specified), withdraw from this Agreement. Notwithstanding any other provision of the Agreement, the Permittor reserves the right to revoke this permit at any time, with or without notice.

"See attachment designated paragraph 2(a) on page 10(a) . . . .

"2(a) It is expressly understood that Permittee after thirty months actual occupancy of said Building No. 60, may at any time, following sixty (60) days written notice to the Permittor, withdraw from this Agreement. Until the thirty month period has elapsed, Permittee must give notice of withdrawal in accordance with Paragraph 2 of this Permit."

During the trial of the case the defendant sought to introduce evidence of a parol agreement to the effect that at the time of signing the Use Permit, defendant entered into a collateral agreement or contract with VICORP that the said Permit would not be revoked except in the event of a national emergency, which was objected to by plaintiff. As the defendant admitted that it was being offered solely as an equitable defense, the court permitted its introduction.

The principal questions raised by the pleadings and memoranda filed by the parties are:

39

(a) Whether plaintiff is a third party to the agreement under which defendant occupies the premises, the subject of this action, and if plaintiff is a third party, can it raise the parol evidence rule;

(b) Whether parol evidence is admissible to explain the clause of the agreement which gives VICORP the right to terminate the agreement at any time with or without notice;

(c) Whether the agreement from VICORP, termed a "permit", was a license, a lease or a "servitude";

(d) Whether the president of VICORP, who signed the agreement, had the power to make a separate verbal agreement which is contrary to the one he signed;

(e) Whether, in the event the court should find that the plaintiff is entitled to revoke the permit and to have immediate possession, defendant is entitled to be indemnified.

In its memorandum of law defendant argues at length that parol evidence may be properly admitted in this case, and cites several cases to the effect that parol evidence rule does not apply in an action between a party to a contract and a third party.

■ It is the opinion of the court that the College is not a third party to the contract, but a successor in interest to the premises under consideration and to the Agreement. Therefore, the cases cited are not in point.

The deed to the College on page 2 (Pl's Ex #VIII) clearly states that "the party of the first part [the United States of America] . . . has remised, released and forever quitclaimed unto the party of the second part, and its successors and assigns, all of the right, title and interest as the party of the first part has in and to . . ." the premises in the case at bar. "One can be a 'successor in interest' by assignment or conveyance, as well as by descent." Clotworthy, et al. v. Clyde, et al., 265 P.2d 420.

In unambiguous terms the agreement provides, as indicated above, for revocation at any time, with or without notice.

"The terms and effect of a written lease cannot be added to, contradicted, or varied by parol or extrinsic evidence of

the intentions of the parties, their negotiations leading up to the lease, or what was said or done prior to, and at the time of, executing the instrument." United States v. Seaboard Machinery Corp., 256 F.2d 166, certiorari denied, Seaboard Machinery Corp. v. United States, 79 S.Ct. 320, 358 U.S. 932, 3 L.Ed.2d 304; Washburn v. Gillespie, 261 Fed. 41, certiorari denied 40 S.Ct. 396, 252 U.S. 587, 64 L.Ed. 729; Mouat v. United States 119 F.Supp. 499.

■ The statements in a lease as to term thereof are conclusive, and the term can be neither enlarged nor restricted by showing a contemporaneous or prior parol agreement, or a contrary understanding or intent of a party, nor can an oral agreement be shown giving the tenant the right to surrender the premises and terminate the lease on the happening of certain contingencies, or at his pleasure. 32 C.J.S. Evidence, § 919, p. 297; La Cava v. Breedlove, 174 P.2d 880; Roberts v. Watson, 195 N.W. 211.

In the La Cava v. Breedlove case, id., the court said at page 882, "The written lease nullified all previous and contemporary oral agreements contrary to its terms which may have been made and was binding upon the parties, unless its execution was procured by means of fraud on the part of the plaintiff. The substance of the alleged representation was that plaintiff would allow defendants to remain in the premises as his tenants for the duration of the war, although the term of the written lease was only one year. . . . The offered evidence was therefore properly excluded, for the reason that it was no more than an attempt to substitute the contemporaneous oral agreement for the written one. If it had been admitted the ultimate effect would have been to vary the terms of the written lease, and since the lease itself is controlling evidence of its terms and conditions, it could not be changed by any contemporaneous parol agreement and therefore the court did not err in refusing its admission."

41

This court concurs in the above ruling, as no evidence aliunde would be admissible to establish alleged oral understanding in the agreement.

While it is true, as contended by the defendant, that in some situations a contract must be construed in the light of the circumstances under which it is made, and in such situations parol evidence is admissible, in this case it is clear from the above that this court cannot admit the offered evidence for the purpose of varying the terms of the contract. To do so would have the effect of permitting the defendant to remain indefinitely in possession of the property, perhaps even longer than the term contained in the written agreement, unless a national emergency was declared prior to the end of the term.

In a very ingenious argument the defendant, both in its memoranda of law and orally, arrives at the conclusion that the agreement between VICORP and defendant was a license, a "servitude", of which the plaintiff had knowledge, and as such comes under the provision of the deed to the college, subjecting it "to any and all existing easements, rights-of-way, reservations, restrictions and servitudes whether of record or not . . . ." This, he claims, estops the plaintiff from revoking the Use Permit.

In this the court does not concur. Although the parties called themselves "Permittor" and Permittee", the document was for all intent and purpose a lease. The agreement gave the defendant "the benefit, use and possession of the said premises", subject to revocation at the will of the Permittor. Of this the plaintiff had knowledge. There was no evidence plaintiff had more.

Notwithstanding it has been held "that purchasers of real estate are affected not only by what appears of record but also by what they could have learned by inquiry of the person in possession and of others who they had reason to believe knew of facts which might affect the title" (see

Machover v. Abdallah, 4 V.I. 518), defendant's claim to possession other than that contained in the agreement was invalid both in law and in equity.

■ It is said that to create a valid lease the essential points of mutual agreement which are necessary are: (1) description of the premises; (2) definite and agreed terms; (3) an agreed rental, whether in money or otherwise, and (4) the time and manner of payment. White v. Island Interiors, Inc., 4 V.I. 315; Linnaard v. Sonnenschein, 272 Pac. 315; Levin v. Saroff, 201 Pac. 961.

■ The agreement between the parties contained all of the above requisites. Although there was a surrender clause or option to terminate on both sides, it did not change the agreement into a license.

■ Leases may and frequently do, contain provisions giving an election, option, right or privilege to the parties or one of them to terminate the lease at will. 32 Am. Jur. § 830, p. 707; Vinyard v. Republican Iron & Steel Co., 87 So. 552; Hendry v. Squier, 25 N.E. 830; Martinez v. Rocky Mountain & S.F.R. Co., 47 P.2d 903; Willis v. Thomas, 9 S.W.2d 423.

■ The essential of a "lease" as distinguished from a "license" is that it gives right to possession of real property as against even the landlord. Smith v. Royal Ins. Co., 5 F.Supp. 435, 437.

■ Another test to determine whether agreement for use of realty is a "lease" or "license" is whether contract gives exclusive use of premises as against all the world, in which case it is a lease. Herigstad v. Hardrock Oil Co., 52 P.2d 171, 176. Defendant had exclusive use of Building No. 60.

■ ■ An option or privilege to terminate a lease may be conferred by implication from other provisions as well as by express terms, but the reservation of an option to terminate a written lease *cannot* rest on an oral contemporaneous

43

agreement, and oral testimony is not admissible to show such an agreement at the time the lease was made, since that would vary the terms of the written lease by oral testimony. 32 Am.Jur., Landlord and Tenant, § 830, p. 707.

From what has been said it is the opinion of the court that the agreement between VICORP and the defendant is a lease and not a license.

Turning attention as to whether the President of VICORP had authority to make representations with respect to the revocability of the agreement, it appears that since he claimed he had that authority he should have included it in the agreement which he signed. According to his testimony, page 64 of the transcript, the leases or permits which were prepared by the Department of Interior, prior to the one entered into with Vitex, contained the clause that they would not be revoked except in case of national emergency. Inasmuch as the one with Vitex, which appears to have been also prepared by the office of the Department of Interior did not so provide, it appears to the court that it was his duty to sign it as it was, which he did, or to have changed it, which he did not. Not having done so the agreement stands as is, and the defendant having also signed it, is bound thereby.

Contrary to the statement made by the President of VICORP as to what the "policy" was, the court does not consider the change in the agreement as any change of "policy", but a change in the kind of agreement which the Government was then willing to enter into. Each agreement stood on its own, as contained in its four corners.

 While as President of VICORP he must have had certain powers, it does not appear as if he had any authority, nor did he show any, which gave him the right to make representations concerning property of the United States of America, administered by VICORP, contrary to the agreement he signed as such president, as the rule is, that an

44

agent of a corporation cannot testify to transactions as to which there is better evidence than his parol narrative. 13 Am.Jur., Corporations, § 946, p. 907. The better evidence in the case before the court is the written agreement.

In Williams Pocahontas Coal Co. v. Berwind Land Co., 76 F.2d 319, certiorari denied in 296 U.S. 610, 80 L.Ed. 432, a mining lease had expressly provided that the lease should continue until all coal measuring 2 feet 6 inches or more had been mined, the term in no sense being ambiguous. Letters and conversations of the lessor company's *president*, concerning the amount of coal required to be mined, prior to the execution of the lease, could not, the court held, be read into the lease itself. "That instrument is conclusively presumed to contain the agreement between the parties upon which their minds have met, and the officials of the defendant company entered into the lease with a full and complete knowledge of all the circumstances surrounding the mining of this particular coal. It is only when a written instrument is ambiguous that outside evidence will be received to aid in arriving at a proper interpretation." Cf. Courtright v. Dimmick, 70 P.2d 269; Burns v. Great Atlantic & Pac. Tea Co., 45 N.E.2d 739.

 While admitting, as defendant contends, that VICORP was created by Congress and given certain powers, among which was "to acquire, in any lawful manner any property, real, personal, or mixed . . . to hold, maintain, use, and operate the same, and to sell, lease or otherwise dispose of the same . . . on such terms as may be prescribed by the corporation", it must have been clear to the President of VICORP and to the President of Vitex, who executed the agreement on behalf of Vitex, that VICORP had no power to *sell* the property in question without the consent of the United States, since VICORP was only administering the same as its agent, and equally so, that it had no power to *lease* or otherwise dispose of the

45

same on any terms *other than those prescribed by the United States* which, in the case before the court, were those terms contained in the written agreement. The unauthorized representations made by the President of VICORP could therefore neither bind VICORP, the United States of America, nor its transferee, the College.

It is also the opinion of the court that sufficient time elapsed during the negotiations as to have put the Permittee on notice that VICORP had not the power or authority to do as it will with the property, for according to the testimony of the President of VICORP (p. 61 of the transcript), the negotiations lasted "two months, perhaps three". However, notwithstanding Mr. Herman, the President of Vitex, was concerned over the revocation clause and its implications, at no time was the said clause changed by the President of VICORP. Moreover, the testimony of the President of VICORP concerning the representations made was to the effect that "the general policy in connection with the leasing of any of the property was that they would not be reoccupied or taken back, except in the case of a national emergency." (p. 63). It appears as if the case of La Cava v. Breedlove, id. is somewhat in point. It does not seem to this court that the representation, even though made, was sufficient to warrant reliance thereon by the defendant in view of all the circumstances and the revocability of the agreement. Judging by the profit made by the defendant in one year of operation, as testified to by its president (see transcript p. 55), it seems as if it anticipated this and was willing to take the chance.

The defendant further contends that upon reliance of representation made by the president of VICORP with reference to revocation defendant expended capital in the amount of over $280,000, and if it had to vacate the premises it would sustain damages in excess of $500,000.

In the case of Ramey v. Koons, 230 F.2d 802, plaintiff

46

leased for ten years certain property, about 3600 acres to one Charles A. Koons & Co. under a written agreement, paragraph 13 of which reads as follows:

"It is understood that the Tenant will assign this lease and upon such assignment and assumption by Assignee of the obligations hereunder, the Tenant should be released from all obligations hereunder."

Action was brought against Koons individually and as a co-partner doing business as Charles Koons & Co. and against the Assignee, a Delaware Corporation. It was recited that Charles Koons represented that the lease would be assigned to a responsible corporation with substantial assets to be organized by him, and that upon the assumption of the lease the corporation would be legally responsible. In reliance upon these representations, the landlord says he was induced to agree to paragraph 13 of the lease agreement.

Among other things the landlord asserted that he had suffered damages of one million dollars; that the corporation had no "assets"; was not legally responsible and was a mere straw, etc.

On motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted, the court granted the motion as to Koons, the person who allegedly made the representations upon which the plaintiff relied. The court's ruling on this point was as follows:

"Our initial and primary question is whether the so-called parol evidence rule precludes the landlord from recovering. We say 'so-called' parol evidence rule because, as the Florida Supreme Court has pointed out, the rule is not one of evidence but of substantive law. Milton v. Burton, 79 Fla. 266, 84 So. 147, citing Wigmore on Evidence, 3409, 3427. Cf. South Florida Lumber Mills v. Breuchaud, 5 Cir., 1931, 51 F.2d 490, 493. In speaking of the rule Professor Thayer observed 'Few things are darker than this or fuller of subtle difficulties'. Thayer, Preliminary Treaties on Evidence 390. . . . Since the time of Professor Thayer most of the difficulties he

mentioned have dissolved in judicial decisions. We find none in the case before us."

Commenting further, the court said:

"The so-called 'parol evidence rule' forbids any addition to or contradiction of the terms of a written instrument by testimony purporting to show that, at or before the signing of the document, further or different terms were orally agreed upon by the parties; provided, always, that the written instrument appears on its face to express an agreement complete in all essential terms."

 It does appear to the court that just as the plaintiff in the above case was precluded from recovering, the defendant in this case is equally precluded, both having relied on representations aliunde the agreement.

 Finally, the defense made by defendant to the effect that the bringing of eviction proceeding by the College, resulting from the terms and conditions in the deed, in spite of representations by VICORP, constitutes a denial of due process of law, and that other licensees of land at Bourne Field similarly situated are in continuous possession under similar permits, deprives defendant of equal protection of the law, seems to be irrelevant. United States v. Blumenthal, 4 V.I. 409, 315 F.2d 351. For if a tenant does not have a right to continue in possession of premises under terms and conditions contained in the agreement by which he is in possession, it matters not if the owner of the property moves to evict him and not other tenants similarly situated.

 Owners of property have an inalienable right to choose their tenants, providing they violate no valid law or condition under which they hold, unless the law or condition were for the benefit of the objecting tenant. As the provisions of any other agreement affecting the property demised to the College were not for defendant's benefit, can defendant aught complain?

In the light of the foregoing, it is the opinion of this court that the Plaintiff, the College of the Virgin Islands

48

and transferee of the properties under the Quitclaim Deed from the United States of America, is entitled to immediate possession of Bldg. No. 60, now occupied by the defendant, and that the said College shall not be liable to defendant for any damages it might sustain by reason of having to vacate.

A judgment for recovery of the premises will be entered. However, in view of the difficulty in finding suitable premises as testified to by defendant (see transcript p. 59), the court shall exercise its equity powers by staying order of eviction for a period of three months after entry of judgment, conditioned upon the payment to the plaintiff of rent in accordance with the agreement dated September 19, 1961.