**MOUAT v. UNITED STATES.**
No. 49896.

United States Court of Claims.
March 2, 1954.

H. Lowndes Maury, Butte, Mont., and Ralph E. Becker, Washington, D. C., Alfred G. Shone, Butte, Mont., on the briefs, for plaintiff.

Thomas L. McKevitt, Washington, D. C., Perry W. Morton, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, and MADDEN, Judges.

JONES, Chief Judge.

The plaintiff for himself and other interested parties, and as administrator of the estate of his deceased wife, instituted this suit for the value of certain improvements which it is alleged were taken by the Government and converted to its own use. For simplicity the various parties at interest will be referred to as the plaintiff.

The plaintiff owned three patented tracts and several unpatented lode and placer claims located in Custer National Forest Reserve in Stillwater County, Montana.

On December 20, 1941, the plaintiff, as lessor, entered into a 10-year lease contract with the Metals Reserve Company, a government corporation created by the Reconstruction Finance Corporation.

This case concerns improvements on two of these unpatented claims.

By the terms of the lease it was agreed that plaintiff would be paid a royalty of at least $10,000 per year on chromite ore and other minerals or metals mined from the leased premises, with a proviso that if operations were suspended for any of several reasons the payment would likewise be suspended for such period, and

that on 90 days' notice and the payment of $1,000 the defendant could terminate the lease.

The lease also contained the following provision:

"Upon the expiration of this lease or the termination of this lease for any reason by either party, lessee shall have six (6) months additional time to remove from the leased premises its personal property and its tools, equipment, machinery, tracks and tramways, but shall leave intact all mine workings and timbering, ties and all excavations, foundations, wooden mine structures, wooden tramway towers and wooden buildings erected upon the demised premises and ore on dumps upon which royalties have not been paid.

\* \* \* \* \*

"17. Time is of the essence of this agreement \* \* \* .

"18. It is mutually agreed that this lease is a Montana contract, and shall be interpreted and construed under and by the laws of the State of Montana.

\* \* \* \* \*

"20. Lessee agrees with the lessors that unless there is an understanding to the contrary in writing, anything remaining on the premises herein demised and leased upon the termination hereof, for a period of more than six months after such termination, shall conclusively be deemed to have been abandoned by the lessee in favor of the lessors.

\* \* \* \* \*

"22. Promptly upon receipt of lessee's written request, lessors will execute and deliver to lessee a quit claim deed to all of lessors' right, title, and interest in and to property not to exceed 200 acres, to be designated by lessee for use by lessee for millsites, townsites, stock piling and tailings disposal."

There is no evidence in writing of any variation in these terms. However, in conferences preceding the execution of the lease it was understood that the structures erected by the lessee for use as a townsite and millsite would be built on land to be conveyed by the lessors by quitclaim deed and that the term "wooden buildings" in paragraph 15 would not apply to buildings on the townsite, but would apply to buildings at the millsite, and that the wooden buildings to be left on the premises included tool houses, machine houses and other structures necessary to mining operations.

There was objection on the part of plaintiff to this evidence as an effort to vary the terms of the written lease and on the ground that all previous negotiations were merged in the written instrument. If the provisions of the lease contract are clear it is the generally accepted rule that prior negotiations and conversations may not serve to vary the terms of an unambiguous document that is finally agreed upon.

There is no evidence that the lessors were ever requested to execute or deliver any quitclaim deed to any part of the leased premises and none was executed. The townsite and millsite structures, loading platforms, machine shops, and other improvements were constructed on the leased premises.

On February 16, 1942, the Defense Plant Corporation, a wholly owned subsidiary of the Reconstruction Finance Corporation, acting for itself and the Metals Reserve Company, obtained from the Forest Service, Department of Agriculture, a special use permit for the purpose of carrying on mining operations within the forest reserve. The permit covered the leased lands here involved and some additional areas. The conditions of the permit are set out in finding 5.

During the year 1942 the Defense Plant Corporation constructed within the Lake Placer claims of plaintiff seventy-three 3- and 4-room dwellings, some additional duplexes, bunkhouses, a mess hall, a store building, a first-aid house, a postoffice building and a garage.

The townsite extended beyond the leased premises onto adjacent property.

The Metals Reserve Company paid the plaintiff the minimum royalty for 1942 and the royalty payment for 1943 exceeded the minimum stipulated. Production of ore on the leased premises ceased on October 1, 1943. On June 30, 1945, by act of Congress, the Metals Reserve Company was dissolved and its functions, assets, and liabilities were transferred to the Reconstruction Finance Corporation which was made subject to all existing liabilities.

By the payment of the required sum of $1,000 and written notice to the lessors on November 19, 1945, the Reconstruction Finance Corporation terminated the lease, effective February 28, 1946. The Reconstruction Finance Corporation, however, did not surrender possession of the leased premises but continued to hold over all of said lands until the close of business on August 31, 1946, at which time the War Assets Administration assumed the actual control and custody of the premises and held them until possession was restored to the lessors by the United States District Court for the District of Montana, pursuant to judgment entered June 11, 1949.

The Defense Plant Corporation had on April 16, 1945, declared to the Surplus Property Administration that the improvements at the mine and townsite located on the leased premises and those at the millsite situated on lands which had been acquired by condemnation proceedings were surplus property.

During the 6-month period from February 28 to August 31, 1946, certain of the properties as listed in finding 10 were removed from the townsite area on the Lake Placer claims.

After August 31, 1946, the War Assets Administration removed from the Lake Placer leased premises twenty-one 3-room houses which had a market value at that time of $400 each, or a total value of $8,400.

The plaintiff claims compensation under the Fifth Amendment for the properties removed by the Reconstruction Finance Corporation during the 6-month period prior to August 31, 1946, and also for the properties removed by the War Assets Administration from the Lake Placer leased premises after August 31, 1946.

Since we regard the provisions of the lease contract as clear, we find the plaintiff is entitled to the value of the properties removed from the leased premises in violation of the terms of the lease agreement.

But here a complicating feature comes into the picture.

On September 17, 1946, the plaintiff filed an action against the Reconstruction Finance Corporation and the War Assets Administration in the United States District Court for the District of Montana, seeking further rental payments and in addition the sum of $41,000 for the alleged conversion of the plumbing articles and fixtures; $600 each for the destruction of 22 buildings, and a writ of possession. On motion of the War Assets Administration the suit was dismissed as to that corporation on the ground that it was not subject to suit.

In June 1947, hearings were held before the Acting Manager of the District Land Office, Billings, Montana, in an adversary proceeding instituted by the United States against the plaintiff to cancel the original, first amended, and second amended Lake Placer claims on the ground that they were not based on a valuable mineral discovery. This action was filed during the course of the trial in the District Court. The Acting Manager of the District Land Office held that the Lake Placer claims were invalid, whereupon the District Court, after having heard evidence on the issue took the case under advisement on November 14, 1947. Later, on July 8, 1948, the Acting Director of the Bureau of Land Management affirmed the decision of the Acting Manager of the District Land

Office and declared the Lake Placer claims invalid. The Solicitor of the Department of the Interior on January 27, 1949, acting on the appeal of the claimants, pursuant to authority delegated by the Secretary of the Interior, affirmed the decision of the Acting Director of the Bureau of Land Management, holding the claims to be invalid.

On February 28, 1949, the District Court filed its written opinion in the case holding that plaintiff was entitled to a judgment for immediate possession and for rentals for the years 1944, 1945, and two months of 1946, but also holding that there was an apparent ambiguity in the use of the term "wooden buildings" in paragraph 15 of the lease, and on the basis of parol evidence ruled that the buildings on the Lake Placer claims were not intended to become the property of the lessors upon the termination of the lease. The court concluded that the plaintiffs were the owners of and entitled to the immediate possession of all the leased premises except the Lake Placer claims, "title to which is now awaiting the decision on appeal by the Secretary of the Interior." The court further held that the Reconstruction Finance Corporation was the owner of and entitled to the possession of all buildings or structures situated upon the Lake Placer claims without requirement of immediate removal. Both parties appealed.

The Circuit Court of Appeals reversed that part of the lower court's judgment which held that the Reconstruction Finance Corporation was the owner and entitled to the possession of all houses, buildings or structures situated upon the leased Lake Placer claims. Reconstruction Finance Corp. v. Mouat, 9 Cir., 184 F.2d 44. The reason stated was that the lease was terminated February 28, 1946, and that the 6-month period mentioned in paragraphs 15 and 20 of. the lease expired August 31,. 1946, after which the Reconstruction Finance Corporation had no right, title or interest in or to any house, building or structure on the said Lake Placer claims. The Circuit Court of Appeals made no ruling or statement with respect to the validity of the Lake Placer claims.

Judgment on the Mandate was entered by the United States District Court for Montana on October 13, 1950, in accordance with the decision and opinion of the Circuit Court of Appeals.

Following the decision of the Solicitor of the Department of the Interior in respect to the validity of the Lake Placer claims additional hearings were held in November 1949 before the Manager of the District Land Office at Billings, Montana, and on March 14, 1950, the Manager by written decision expressed the opinion that a valid discovery had not been made but stated that inasmuch as the defendant the plaintiff in this case, with the exception of a short time previous to the war had had little time to do any development work on the claims it was recommended that he have more time to conduct his operations to see if he could present evidence that the Lake Placer claims could be developed as a profitable placer operation.

In a written decision dated May 16, 1951, the Solicitor of the Department of the Interior acted on the appeal and concluded that the evidence in the record of proceedings warranted a finding that the minerals discovered on the Lake Placer claims were of such nature that they lacked value as marketable commodities and did not come within the category of "valuable mineral deposits" which would "justify a person of ordinary prudence in the further expenditure of his time and means in an effort to develop a paying mine." Accordingly he affirmed the decision of the Acting Director of the Bureau of Land Management. However, on the ground of newly discovered evidence and errors in the law, the Solicitor of the Department of the Interior reconsidered the decision of May 16, 1951, and by written opinion dated January 11, 1954, reversed the ruling and held that the original and first amended Lake Placer claims were valid.

In the meantime evidence had been taken by a trial commissioner of this court on the pending claim. The recommended findings of fact had been filed and the briefs of the parties had been presented. A considerable portion of the briefs of both parties was devoted to the question of the validity of the claims and also to the question of whether, even if the claims were invalid, the lessee had a right to question the lessor's title while the lessee was in possession under a written lease.

The final decision that the Lake Placer claims were valid makes a considerable portion of the briefs of the respective parties inapplicable to the issue as now presented.

In view of the final decision by the Department of the Interior holding the Lake Placer claims valid, there seems to be no doubt that the plaintiff had the right to possession and had a right to make a lease of the claims to the defendant.

If the matter were before us for decision on the merits, since the provisions of the lease appear to be clear, we would be inclined to hold plaintiff entitled to recover the property, if any, removed from the premises prior to the ending on August 31, 1946, of the 6-month period following the cancellation of the lease, and also for the properties removed by the War Assets Administration after that date.

However, the issue as to the properties removed prior to August 31, 1946, was directly involved in the District Court trial and in the opinion by the Circuit Court of Appeals in the case of Reconstruction Finance Corporation v. Mouat, 9 Cir., 184 F.2d 44. We quote from page 48 of 184 F.2d of the opinion as follows:

"The Mouats' notice of appeal was as follows:

\* \* \* \* \*

" '2. Wherein said judgment fails to adjudicate that the (Mouats) were entitled to a judgment for any sum of money at all for waste as to the removal and conversion of the plumbing fixtures of buildings on the Lake placer and other strip and waste by destruction of buildings, removal of fixtures, removal of buildings and all waste committed at the leased premises by (Reconstruction Finance Corporation).

" '3. Wherein the said judgment fails to adjudicate that the (Mouats) were entitled to six hundred dollars each, or any sum whatever, for the destruction of twenty-two residence buildings on the said Lake placer.'
\* \* \* "

The opinion then continues to the effect that there was no substantial evidence that the Reconstruction Finance Corporation committed waste on the leased premises or removed plumbing fixtures from any building thereon or converted such fixtures to its own use or destroyed any building on the leased premises or removed any property therefrom.

The opinion then states that there was evidence that the War Assets Administration removed plumbing fixtures from the buildings on the leased premises, removed buildings and other property from the leased premises and disposed of such fixtures, buildings and other property, but that that evidence was immaterial for the Reconstruction Finance Corporation was not responsible for acts committed by the War Assets Administration.

█ In the light of the record before us it seems strange that the Circuit Court should reach the conclusion that there was no evidence of the removal of the property from the premises by the Reconstruction Finance Corporation. However, the issue was directly made in the trial court and in the Circuit Court, and plaintiff having had his day in court on that issue, it is *res judicata* in so far as removals prior to August 31, 1946, are concerned. That issue has been directly raised and found against the plaintiff in a forum of his own choosing, and the matter should not be relitigated here.

The removals by the War Assets Administration after August 31, 1946, were not involved in that suit and therefore fall into a different category.

We have found that the War Assets Administration removed from the Lake Placer leased premises twenty-one 3-room houses which had a market value at that time of $400 each, or a total value of $8,400. The plaintiff is entitled to recover the sum of $8,400, with interest thereon at the rate of 4 percent per annum from August 31, 1946, to date of payment, not as interest but as a part of just compensation.

It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.