**COLLEGE OF THE VIRGIN ISLANDS, Plaintiff-Appellee**
**v.**
**VITEX CORPORATION, Defendant-Appellant**

## Civil No. 210-1965

## District Court of the Virgin Islands
### Div. of St. Thomas and St. John

## November 18, 1966

RUSSELL B. JOHNSON, ESQ., Christiansted, St. Croix, Virgin Islands, *for defendant*

PETER O'DEA, Assistant Attorney General, Charlotte Amalie, St. Thomas, Virgin Islands, *for plaintiff*

GORDON, *District Judge*

MEMORANDUM OPINION

The appeal of the above case from the decision of the Municipal Court of the Virgin Islands, Division of St. Thomas and St. John, was submitted on briefs and the

above appearances were made; appellant was granted until August 7, 1966 to file a brief and appellee was granted until August 27, 1966 to file a response brief and appellant was granted until September 1, 1966 to file a rebuttal brief; the case was submitted for decision as of September 1, 1966.

## I

### IS THE CONTRACT IN ISSUE A LEASE?

Appellant contends that the document is in fact a license which has become irrevocable because of improvements made. Appellant argues that the expenditure ripened the license into a grant, an easement or a servitude. The distinction between a lease and a license is set forth in 32 Am. Jur., Landlord and Tenant, § 5 which provides: "A license to do an act upon land involves the exclusive occupation of the land by the licensee, so far as is necessary to do the act and no further, whereas a lease gives the right of possession of the land, and the exclusive occupation of it for all purposes not prohibited by its terms." See also Herigsted v. Hardrock Oil Co., 52 P.2d 171.

While it is true that a license coupled with a grant is irrevocable (33 Am. Jur., Licenses § 102) the Court is not satisfied that this contract is a license. Western Union Telegraph Co. v. Pennsylvania Co., 129 F. 849, which is cited merely exemplifies the rule stated above. That case involves a situation in which the contract in fact did only grant a right to construct, maintain and operate a telegraph line along a railroad right of way. The right to the land was given only for the performance of certain acts and amounted to an easement.

■ Defendant in this case asserts that the relationship between the parties was that of license rather than a tenancy because defendant asserts defendant did not have exclusive right to the premises as to the world (including,

69

of course, plaintiff). A review of page one of the written agreement between the parties refutes this contention. The benefit, use and possession (in consideration of rent) was unequivocally transferred to defendant and could have been so enforced. The exceptions reserved to plaintiff were specific, were spelled out and set forth in the document (page one and page six paragraphs "n" and "o"). The Court is satisfied that the agreement between the parties was a lease with a right of cancellation reserved to plaintiff at any time with or without notice. Furthermore, the provisions allowing the landlord to terminate the contract without notice does not alter the lease relationship. Leases may and frequently do contain such provisions. 32 Am. Jur., Landlord and Tenant, § 830.

## II

MAY PAROL EVIDENCE BE RECEIVED WITH RESPECT TO THE LEASE?

■ Plaintiff-appellee asserts that the lease being in writing and not ambiguous, the Court cannot receive parol evidence as to its terms. There is no issue asserting that the termination clause was ambiguous. The U.S. Court of Claims set forth the general rule as follows: "When provisions of lease contract are clear, general rule is that prior negotiations and conversations may not serve to vary the terms of an unambiguous document that is finally agreed upon." Mouat v. United States, 119 F.Supp. 499. "If a written agreement contains no obvious or latent ambiguities, neither parties nor their privies may testify to what the parties meant but failed to state." Oxford Commercial Corp. v. Fred Landau et al., individually and as co-partners doing business as Fred Landau & Co., 190 F.2d 230. See also Burns et al. v. Great Atlantic and Pacific Tea Co., 45 N.E.2d 739. Ramey v. Charles Koons individually

and as a partner in a co-partnership d/b/a Charles A. Koons and Co., 76 F. 319, Courtwright et al. v. Dommick, 70 P.2d 269. 20 Am. Jur., Evidence, § 1159, p. 1013. 32 A.C.I.S., Evidence, § 919.

■ The only exceptions to the use of parol evidence in this situation would be if the language in issue is ambiguous or if there was fraud. Washburn v. Gillespie, 261 F. 41. There is no issue raised as to ambiguity of the termination language or as to fraud.

### III

DOES EQUITABLE ESTOPPEL APPLY?

Defendant asserts that this Court, being a court of equity, should apply the doctrine of equitable estoppel based upon the alleged representations of VICorp's president when the contract was being negotiated.

■ It would be best to deal at this point with the principal agent relationship in general. A corporation is bound by all parol contracts of its officers unless the act is ultra vires and the third party should so suspect. 19 Am. Jur. 2d § 1259. Officers of a corporation may impliedly have authority to enter into corporation contracts but not beyond their authority. 19 Am. Jur. 2d § 1176. In this case it is clear from the contract in evidence that VICorp intended that the lease could be broken by VICorp without notice. Defendant who asserts the affirmative defense of equitable estoppel has presented no proof that VICorp extended to its president the authority to represent to the contrary. The alleged act therefore would be ultra vires and the limitation being in the contract and being contrary to the alleged president's representation the defendant should have suspected that the alleged representation was ultra vires.

■ Defendant having had this actual knowledge, the principal (VICorp) and its assignee (plaintiff) cannot be

71

bound. "A principal may limit the powers of his agent, and all parties who deal with the agent with knowledge of the limitation are bound by its terms." Gustave Fischer Co. v. Morrison, 136 Conn. 399, 78 A.2d 242. "Actual knowledge of an agent's limitations is as binding upon a third person as upon the agent and defeats any right of the third person to reply on the ostensible authority of the agent to bind his principal." Federal Deposit Ins. Corp. v. Grim, 184 Okla. 275, 86 P.2d 774. "Restatement, Agency (2d ed.) §§ 49, 166. Representations or acts of an agent contrary to his instructions will not be binding upon the principal if the one with whom the agent is dealing has knowledge of the limitation on his authority, unless, with knowledge of all the facts, the principal either waives the disobedience of the agent or adopts his act. Hartman v. National Council, K.L.S. 76 Or. 153, 147 P. 931." 3 Am. Jur. 2d Agency § 77. Defendant cites Murray v. Gadsden et al., 197 F.2d 194. In that case the court quoted Peugh v. Davis, 96 U.S. 332, 336, 24 L.Ed. 775 as follows: ". . . The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified, or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument." The distinguishing language is apparent. The present case does not inquire as to the object of why the parties entered into the lease. The issue raised is merely as to the lease language per se. On that point Peugh v. Davis, supra, says parol evidence cannot vary the written instrument.

With respect to defendant's request that the plaintiff be equitably estopped, it should be noted that an essential element of equitable estoppel that the assisting party prove a lack of knowledge of and a lack of the means of knowledge of the truth as to the facts. The evidence showed that the

defendant had knowledge of the termination provision. The defendant did not show that it lacked the means to ascertain the policy of enforcement of the clause.

■ The following cases clarify whether the U.S. can be equitably estopped by an act of one of its agents. "The Government is not responsible for the . . . wrongful acts of its officers". Gotleib Hart et al. v. United States, 95 U.S. 479. "The Farm Loan Board was without authority to make representations that capital gains from dealings in farm loan bonds were not taxable, and statements by the Board, which a purchase so interpreted and on which he relied, cannot be accorded the weight of uniform and long established administrative treatment. An officer or agency of the United States to whom no administrative authority has been delegated cannot, even by an affirmative undertaking, waive or surrender a public right and thereby estop the United States." United States v. Steward (1940), 311 U.S. 60.

"Whatever the form in which the Government functions anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority." In the Matter of the Estate of Van Hooper (1966), 359 F.2d 569.

"Contracts with the Government must be in strict conformity with the authority conferred before they are enforceable and where there is a fatal defect rendering the agreement unenforceable against the government, the plaintiffs cannot have the benefit of the doctrine of estoppel." Percival H. Reese et al. v. Government of the Virgin Islands, et al. (1960), 277 F.2d 329.

"Before a plaintiff is entitled to rely upon any statement made by a Government agent he must show that this agent had the authority to make the statement. . . .

As long ago as Hawkins v. United States, 96 U.S. 689, 694 24 L.Ed. 607, the Supreme Court said that persons dealing with the Government must take notice of the extent of the authority it had given its agents, and that the Government is not bound by their declarations unless it appears that they had the authority to make them. . . ."

". . . but the government or public authority is not bound in such a case, unless it manifestly appears that the agent was acting within the scope of his authority, or that he had been held out as having authority to do the act, or make the declaration, for or on behalf of the public authorities. Story, Agency, 307a; Lee v. Munroe, 7 Cranch 366 [3 L.Ed. 373]." Kelly v. United States (1950), 91 F.Supp. 305.

"We cannot accept the contention that administrative rulings—such as those here relied on—can thwart the plain purpose of a valid law. As to estoppel, it is enough to repeat that '. . . the United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit.' " United States v. City and County of San Francisco (1940), 310 U.S. 16.

". . . the doctrine of equitable estoppel as distinguished from mere laches may be invoked even against the government. The cases just cited are examples of such, but their doctrine cannot be so far extended as to validate the unauthorized appropriation of the public lands upon the mere ground of occupation and improvements made, . . . ." Utah Power & Light Co. v. United States (1915), 230 F.328.

"In the court the petitioner's sole contention is that the Board, by reason of its prior rulings with respect to other subsidiary water companies and its failure until 1944 to rule upon the Mountain Water Supply Company's status, was estopped to deny that he was not eligible for an annuity on July 1, 1937. We see no basis for such an estoppel."

"It is settled that estoppel may not be asserted against an agency of the United States Government such as the Railroad Retirement Board. Federal Crop Insurance Corp. v. Merrill, 1947, 68 S.Ct., 1." Spencer v. Railroad Retirement Board (1948) 166 F.2d 342. See also Wildermuth et al. v. United States (1952), 195 F.2d 18.

"An officer can, however, bind his government only by acts which come within the just exercise of his official powers and within the scope of his authority." 43 Am. Jur., Public Officers, § 254.

"The duties of a public office include all those which fairly lie within its scope, . . . ." 43 Am. Jur., Public Officers, § 250.

A case very similar to this case is that of Federal Crop Insurance Corp. v. Merrill et al., doing business as Merrill Bros. (1947), 332 U.S. 380. In that case the plaintiff, an agency of and within the Department of Agriculture was empowered by statute to insure wheat crops planted for harvest in 1945 upon terms and conditions not inconsistent with the statute cited *as it may determine* (emphasis supplied) against certain losses. The plaintiff established its regulations as to coverage. The Court said in that case:

"The case no doubt presents phases of hardship. We take for granted that, on the basis of what they were told by the Corporation's local agent, the respondents reasonably believed that their entire crop was covered by petitioner's insurance. And so we assume that recovery could be had against a private insurance company. It is too late in the day to urge that the Government is just another private litigant, for purposes of charging it with liability, whenever it takes over a business heretofore conducted by private enterprise or engages in competition with private ventures. Government is not partly public or partly private, depending upon the governmental pedigree of the type of a particular activity or the manner in which the Government conducts it. The Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. See Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 390. Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. See, e.g., Utah Power & Light Co. v. United States, 243 U.S. 389, 409; United States v. Stewart, 311 U.S. 60, 70, and see, generally, The Floyd Acceptances, 7 Wall, 666."

"The 'terms and conditions' defined by the Corporation, under authority of Congress, for creating liability on the part of the Government preclude recovery for the loss of the reseeded wheat no matter with what good reason the respondents thought they had obtained insurance from the Government."

The decision of the Municipal Court is affirmed with costs to plaintiff-appellee.