**HANS LOLLIK CORPORATION, Plaintiff**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Defendant**

Civil No. 776/1980

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

March 6, 1981

12. Pleading—Motion To Dismiss—Tests and Standards

HENRY C. SMOCK, ESQ., (GRUNERT, STOUT, HYMES, MAYER & SMOCK), St. Thomas, V.I., *for plaintiff*

DONALD M. BOUTON, ESQ., Acting Attorney General, St. Thomas, V.I., *for defendant*

HODGE, *Judge*

## MEMORANDUM OPINION

This matter is before the court on plaintiff's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and on defendant's motion to dismiss on the grounds of (1) failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and (2) failure to join a party, pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure. For the reasons stated below, both motions will be denied.

## UNDISPUTED FACTS

By a quitclaim deed dated September 18, 1945, the United States Government conveyed to the Municipality of St. Thomas and St. John, Plot No. 33 (approximately 24.02 acres) and Plot No. 16 (approximately 7.97 acres) of Great Northside Quarter, Estate Mandahl, St. Thomas, U.S. Virgin Islands. The estate granted was a determinable fee since by the terms of the deed, the municipality would have title only as long as the properties were used for educational and other community purposes.

On April 1, 1964, an agreement was entered into between the Virgin Islands Government and the Hans Lollik Corporation, a Virgin Islands corporation (hereinafter sometimes referred to as Hans Lollik) whereby Hans Lollik was to spend $800,000 within three years from the effective date of the agreement and an additional $500,000 within the next six years to build a hotel, housing project and related facilities on the Great Hans Lollik Island which had been recently purchased by Hans Lollik. As an inducement for Hans Lollik to construct the project, the Virgin Islands Government further agreed to lease Plot No. 33 of Estate Mandahl to Hans Lollik for a term of ninety-nine years, subject to the removal of the restrictions in the quitclaim deed from the U.S. Government. Hans Lollik was to construct a marina on the leased property. The V.I. Government agreed to use its best efforts to have the restrictions removed and agreed that the lease was to become effective automatically upon such removal and upon the ownership of the property by

the V.I. Government in fee simple. It was also agreed that if Hans Lollik failed to spend the required sums of money within the specified time periods, on the hotel and housing project, its only penalty would be to lose its special tax exemptions and subsidies. If, however, within eighteen months, Hans Lollik decided it was not feasible to construct the marina on Estate Mandahl, or if Hans Lollik failed to spend $500,000 on the construction of the marina within five years from the date that construction commenced (which was to be twenty-four months after the effective date of the lease), then the lease would be cancelled without further obligation to either party.

The V.I. Legislature by Act No. 1327, dated March 10, 1965, authorized the Governor of the Virgin Islands to accept the sum of $500 per year from Hans Lollik as payment in lieu of and in full satisfaction of the use requirements imposed by the U.S. Government on No. 33 Estate Mandahl. This payment was to be made no later than June 30th of each year and the money was to be dedicated to the College of the Virgin Islands for library purposes and other purposes as the Board of Trustees directed. By letter dated April 21, 1965, the Farmers Home Administration of the U.S. Department of Agriculture informed the Governor of the Virgin Islands that if the lease to Hans Lollik was modified in accordance with Act No. 1327 and so long as the annual payments were made, the U.S. Government would consider that the restrictions in the quitclaim deed were being complied with and that no re-entry for condition broken would be made by the United States. Accordingly, the agreement between Hans Lollik and the V.I. Government was first amended on July 21, 1965 whereby Hans Lollik agreed to pay $500.00 per year to the V.I. Government.

Due to Hans Lollik's inability to get financing, a second amendment to the lease agreement dated May 4, 1967 was executed in which it was agreed that Hans Lollik would have six years from the effective date of the amendment to spend $1,300,000 for the hotel and housing project and five years to spend $500,000 for building and equipping the marina and its facilities. Again, it was agreed that if Hans Lollik failed to spend the requisite sums on the hotel project, within the time limitations imposed, the only penalty would be the loss of its tax exemptions and subsidies, but should it fail to spend the required amount on the marina, the lease was to be cancelled without further obligations on either party. There is no indication of any further activity by the parties during the next twelve to thirteen years.

On or about July 16, 1980, an application was submitted to the Department of Conservation and Cultural Affairs, Division of Coastal Zone Management (CZM), by the Great Hans Lollik Island Co.,[1] a California partnership, for the construction of private residences, hotel units on the Hans Lollik Island and marina facilities at No. 33 Estate Mandahl. In its application, the partnership represented that it had entered into a contract with the Hans Lollik Corporation for the purchase of the Great Hans Lollik Island and for the assignment of the lease of Estate Mandahl, title to the properties to be conveyed to the partnership after the permit had been granted by the Coastal Zone Management Commission.

By a letter dated July 31, 1980, the Attorney General of the Virgin Islands informed the resident agent of the Hans Lollik Corporation that due to its failure to discharge its obligations under its lease agreement with the Government, the Government was thereby rescinding its agreement of April 1, 1964. The letter made no mention of the two amendments to the lease agreement. By a letter also dated July 31, 1980, the Director of the Division of Coastal Zone Management, Department of Conservation and Cultural Affairs informed the applicant's agent, W. F. McComb Engineering, P.C., that if additional research led to the conclusion that proof of the applicant's legal interest in No. 33 Estate Mandahl had not been offered or if the applicant had not fully complied with its agreement with the Virgin Islands Government, the request for a permit might be denied. The agent was also informed that a public hearing on its application was scheduled for September 24, 1980.

By letter dated August 25, 1980, the Commissioner of the Department of Conservation and Cultural Affairs informed Mr. W. F. McComb of McComb Engineering that since the agreement between Hans Lollik and the Government had been rescinded, that it was the position of the Department that Hans Lollik no longer had sufficient proof of a legal interest in the property to meet the requirements of the Coastal Zone Management Act, 12 V.I.C. § 910(e)(2), and accordingly the processing of the Coastal Zone Management application had been stopped. The Commissioner further advised that the application could be resubmitted upon resolution of the problem regarding the lease through negotiation or litigation. Prior to this notification, Hans Lollik filed this action for declaratory judgment.

---

[1] Defendant incorrectly refers to this company as the Great Hans Lollik Co.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

The plaintiff's motion for summary judgment alleges that under Virgin Islands law a landlord cannot terminate a leasehold without initiating judicial proceedings to effectuate the termination. The defendant opposes this motion on the grounds that genuine issues of material fact exist as to whether the plaintiff's contemplated use of the property vitiates the lease, and whether an extra-judicial termination of the lease is valid where the landlord's obligations under the lease are discharged by the tenant's failure to perform as the lease requires.

■ Under the provisions of Rule 56 of the Federal Rules of Civil Procedure, the granting of summary judgment is appropriate where there are no genuine issues of material fact and where the moving party is entitled to summary judgment as a matter of law. In applying this rule consideration must be given to the pleadings, affidavits, and other documentary submissions of the parties.

The provision in the lease governing the question of termination states as follows:

"(F) If within the eighteen (18) month period set forth above for engineering surveys and tests Hans Lollik determines, in its sole discretion, and for any reason whatsoever that it is not feasible to construct a Marina at Mandahl Salt Pond, *then Hans Lollik shall so advise the Government and the above lease shall be deemed cancelled without further obligation to either party.* It is further agreed and understood that if Hans Lollik shall fail to expend, or to have expended the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS set forth above, within the time period set forth above, and if such failure is not excused by reason of force majeure as further set forth in the clause of this Agreement entitled "Force Majeure" *then Hans Lollik's only liability for such unexcused failure shall be cancellation of this lease without obligation to either party.* It is understood and agreed, however, that if the said lease is cancelled for any failure of Hans Lollik without respect to this clause, or for whatever other reason, if said lease fails to become effective because of failure of the condition precedent to occur as set forth therein, none of these events shall affect any concessions, covenants or agreements made by the Government with respect to the construction, development and operation of the Hotel and Housing Project on Great Hans Lollik Island, including, but not

226

limited to, concessions, covenants or agreements respecting the granting of tax exemptions and subsidies." (Emphasis added.)

 Termination clauses are quite common in lease agreements and are generally upheld.[2] Such clauses often include the waiver of certain rights given by statute, e.g., the right to notice of termination or a prior demand for rent.[3] Since contracts are negotiated with the objective of modifying legal rights, the enforceability of these types of clauses is not surprising. Frequently, termination clauses also give the lessor the right to reenter and repossess the leased premises upon the lessor's termination of the lease.[4] The weight of authority is to the effect that such clauses are valid and enforceable to the extent that the lessor can reenter and repossess[5] without using unnecessary force.[6] In those jurisdictions which have adopted statutes giving a landlord a speedy judicial remedy to gain repossession,[7] it is the majority opinion that such statutes do not abrogate the common law right to peaceable reentry.[8]

 Moreover, just as rights and privileges conferred by the Federal and State Constitutions are subject to knowing and voluntary waiver,[9] those rights and privileges conferred by statutory or com-

---

[2] See discussion of termination clauses in leases in College of the Virgin Islands v. Vitex Corp., 5 V.I. 34 (Terr. Ct. 1965), aff'd., 283 F.Supp. 379 (D.V.I. 1966) aff'd. 393 F.2d 481 (3rd Cir. 1968).

[3] See, e.g., Laughlin v. Hall, 20 N.W.2d 415 (Sup. Ct. Iowa 1945); Shell Oil Refining Co. v. Pierce, 337 S.W.2d 263 (Ct. Appeals Ky. 1960); Colt Lanes of Dover, Inc. v. Brunswick Corp., 281 A.2d 596 (Del. 1971).

[4] See, e.g., Shell Oil Refining Co., supra.

[5] The question may be raised as to whether the government's actions thus far constitute a reentry and repossession. The general view is that a physical reentry is not the only method by which a landlord may claim possession but rather that any acts inconsistent with the landlord-tenant relationship constitutes a reentry. See, Annot. 21 A.L.R.3d 534 (1973); Williams v. Kaiser Alum. and Chemical Sales, Inc., 396 F.Supp. 288 (D.C. Texas 1975) (landlord's attempts to relet deemed a reentry).

[6] See, Restatement (Second) of Property, Section 14.2 Reporter's Note (5); Annot., 6 A.L.R.3d 177, (1973); Shell Oil Refining Co. v. Pierce, supra; Ten Braak v. Waffle Shops, Inc., 542 F.2d 919 (4th Cir. 1976); Clark v. Service Auto, 108 So. 704 (Sup. Ct. Miss. 1926).

[7] The landlord's summary remedies against a tenant improperly holding over may exist in statutory form under either of two titles, "Forcible Entry and Detainer" or "Summary Proceedings". There is in effect in the Virgin Islands a Forcible Entry and Detainer Statute, 28 V.I.C. §§ 781–794.

[8] See, e.g., Liberty Industrial Park Corp. v. Protective Packaging Corp., 335 N.Y.S.2d 333, 71 Misc. 2d 116 (1972).

[9] Constitutional rights that can be waived include the right to counsel by a criminal defendant, Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019 (1938); Argersinger v. Hamlin, 92 S.Ct. 2006 (1972); the right to trial by jury in a criminal proceeding,

227

mon law are similarly subject to knowing and voluntary waiver.[10] It is even more logical and appropriate where, as here, the landlord and tenant are not unsophisticated in business dealings, and are engaged in a substantial commercial transaction. Thus, the advantage that the tenant may need in order to consummate the transaction could be his willingness to waive his right to judicial termination of the lease. By agreeing to allow his landlord to effectuate extra-judicial termination in case of his breach of the agreement, the tenant may thereby conceivably out-wit the competition and secure the lease that might otherwise be unobtainable. Moreover, by such a waiver the tenant may succeed in bargaining for a reduction of his liability for breach, such as limiting it solely to the extra-judicial cancellation by the landlord, without liability for damages, etc. In the termination clause of the lease in question, Hans Lollik succeeded in limiting its liability solely to cancellation of the lease in the event of its decision not to construct a marina at the Mandahl Salt Pond within an eighteen-month period, or in the event of its failure to spend $500,000.00 within a five-year period.

■ The Government asserts that there is an issue of fact as to whether the anticipated uses of Estate Mandahl will comply with the uses to which the premises are restricted in the quitclaim deed. It further asserts that although the restrictions would be discharged by the payment of $500.00 per year by Hans Lollik to the Government, Hans Lollik has not pleaded or otherwise established that it has made these payments. This question of fact, however, does not preclude summary judgment since it is not a genuine issue of material fact. This is so because the narrow issue before the court is whether under the circumstances of this case the Government can summarily terminate the leasehold without initiating a judicial

---

Patton v. United States, 281 U.S. 276, 50 S.Ct. 253 (1930); Singer v. United States, 380 U.S. 24 (1965); and by entering a guilty plea, the simultaneous waiver of the privilege against self-incrimination, the right to a public trial and the right to confront one's accusers, McCarthy v. United States, 394 U.S. 454, 89 S.Ct. 1166 (1969); North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160 (1970). Unlike criminal matters in which a waiver of constitutional matters cannot be presumed, but must always be shown to be voluntary, knowing and intentional, in civil contractual matters a contracting party is presumed to know and intend the provisions of an agreement to which he places his signature. See, gen. 17 Am. Jur. 2d Supp. (1979).

[10] Generally, statutes which are enacted for the protection of the rights of individuals (such as those which protect the rights of individual tenants) are subject to waiver by agreement, while those which are enacted for the protection of the general public (such as criminal laws or police regulations) cannot be waived. See, gen. 17 Am.Jur.2d, Contracts §§ 173, 175 (1964).

proceeding to effectuate the termination. Thus, as to this motion it is clearly immaterial whether the annual rental was paid or whether the contemplated use of the property will be lawful. Furthermore, it is the Government's assertion that it has the right to summary repossession, not because Hans Lollik has failed to pay the annual rental, but because Hans Lollik has failed to spend the stipulated funds toward the construction of the marina and related facilities at Estate Mandahl within the time periods specified in Amendment No. 2 to the Lease Agreement.

Nevertheless, the court is of the opinion that a genuine issue of material fact does exist as to whether Hans Lollik, at the time of execution of the lease, knowingly and voluntarily waived its right to judicial termination of the lease, since if the waiver was knowingly and voluntarily executed, then the Government's extra-judicial termination of the lease would be valid and enforceable against Hans Lollik, who would be estopped to claim statutory or common law deficiencies. In making this determination, many questions such as the type of transaction, the relative bargaining strength of the parties, the possibility of competition, the presence or availability of counsel, and the unilateral or reciprocal nature of the waiver provision must be resolved. Clearly, to grant summary judgment to Hans Lollik in the face of these significant factual questions would violate Rule 56 of the Federal Rules of Civil Procedure.

This court does not ignore Blyden v. Sugar Estates Associates, 14 V.I. 227 (Terr. Ct. 1977), which held that any agreement that a landlord can use self-help to regain possession of leased property is void as against public policy, nor the Restatement (Second) of Property, Section 14.2 (1977) which states that if the controlling law does not preserve the right of self-help, an agreement that a landlord may resort to self-help is against public policy and void. However, neither Blyden nor the Restatement reaches the issue of a knowing and voluntary waiver of the right to judicial termination of the lease. By bringing into focus the waiver aspect of the landlord-tenant relationship, this court hopes to resurrect, at least to a limited extent, the traditional lease provision which authorizes extra-judicial termination for its breach and peaceable reentry.

Accordingly, the question of whether Hans Lollik knowingly and voluntarily waived its right to judicial termination of the lease is a genuine issue of material fact which compels the denial of its motion for summary judgment.

# DEFENDANT'S MOTION TO DISMISS

(a) *Failure To State a Claim Upon Which Relief Can Be Granted*

Defendant asserts that plaintiff has no legally recognized interest in the determination of whether the defendant must bring an action to terminate the plaintiff's leasehold interest, and that therefore plaintiff has failed to state a claim upon which relief can be granted. This court disagrees and is of the opinion that this is not the appropriate test to be used in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

■■ A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint and should be read in conjunction with Rule 8(a)(2) which requires that a claim for relief set out a short and plain statement of the claim showing that the pleader is entitled to relief. It is only when the pleading fails to meet this liberal standard of Rule 8(a) that it is subject to dismissal under Rule 12(b)(6). C. Wright & A. Miller, Federal Practice & Procedure, Civil, 1356 (1969). A Rule 12(b)(6) motion does not address the merits of the claim but merely tests whether the claim has been adequately stated in the complaint.

■■ In its initial complaint as well as in its amended complaint, plaintiff asks this court to issue a declaratory judgment that the defendant cannot automatically terminate its leasehold interest without a judicial proceeding to determine the rights of the parties. In the opinion of the court, this request for relief adequately satisfies the requirements of Rule 8(a)(2) since plaintiff has claimed an interest in property which it asks the court to preserve. For purposes of this motion, the complaint must be construed in the light most favorable to the plaintiff and its well-pleaded facts must be taken as true. C. Wright & A. Miller, Federal Practice & Procedure, Civil 1357 (1969). In so doing, this court is satisfied that plaintiff's complaint does, in fact, state a claim upon which relief can be granted.

(b) *Failure To Join a Party*

Defendant further asserts that the action should be dismissed since the Great Hans Lollik Island Co. has not been joined as a party. From the pleadings and exhibits submitted by the plaintiff thus far, the court has ascertained that the Great Hans Lollik Island Company is a partnership of three individuals located in La Jolla, California. The Great Hans Lollik Island Company is the entity that has made the application for a permit from the Coastal Zone Man-

230

agement Commission (CZM). In its application, it states that it entered into a contract on May 1, 1979, with the Hans Lollik Corporation for the purchase of the Hans Lollik island and for the assignment of its lease of Estate Mandahl, the subject of the present controversy. It further states that title to the properties will pass 30 days from the date that the permit is issued by CZM.

Fed. R. Civ. P. 19 states that a party shall be joined in an action if:

> ". . . (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . .".

This court is of the opinion that none of the circumstances outlined in Rule 19 are present in this case and can see no possible prejudice that would result to the Great Hans Lollik Island Co. should this matter be adjudicated in its absence. From the complaint, its attached exhibits and the CZM application, all of which the court accepts as true and authentic for purposes of this motion, it is clear that the lease was entered into between the Government of the Virgin Islands and the Hans Lollik Corporation, and that to date there has been no assignment of this lease to any other party. In fact, the CZM application makes clear that title to properties presently owned and leased by the Hans Lollik Corporation, on which the proposed hotels and marina are to be built, is not to be transferred to the Great Hans Lollik Island Company until 30 days after the permit is granted. Since the CZM application has been halted due to the defendant's assertion that the plaintiff's leasehold interest in the Estate Mandahl property has been terminated, the Great Hans Lollik Island Company of California presently holds no interest in property or otherwise, which it can claim was interfered with by the Government. Its interest is one that is only anticipatory. Should the court grant the relief sought by plaintiff and should the CZM application be granted subsequently, then the Great Hans Lollik Island Company would benefit from the court's judgment, instead of being prejudiced by it. Should the court rule against the plaintiff, the Great Hans Lollik Island Company would not be prejudiced in any way since it would have no interest in any properties

in dispute. The possibility of multiple litigation is therefore non-existent. Indeed, even if the Great Hans Lollik Island Company were deemed to be a desirable party by the court under Rule 19, the dismissal of the action would be an inappropriate remedy since Rule 19(a) itself provides for less drastic alternatives, such as voluntary joinder as a party to the action, or in the event that the party refuses, by ordering involuntary joinder as a party-defendant or party-plaintiff.

 Thus, it is clear that defendant's motion to dismiss for failure to join a party cannot be granted under these circumstances.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment and defendant's motion to dismiss will both be denied.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that the plaintiff's motion for summary judgment is DENIED, and it is further

ORDERED that the defendant's motion to dismiss is DENIED, and it is further

ORDERED that a Pre-Trial Conference is hereby scheduled for Monday, March 16, 1981 in Courtroom 1, at 10:00 a.m., or as soon thereafter as counsel can be heard.